THE TERRITORY OF HAWAII, BY LYMAN H. BIGELOW, ITS SUPERINTENDENT OF PUBLIC WORKS, *v.* THE HONOLULU PLANTATION COMPANY, LIMITED, ET AL.

No. 2254.

SUBMITTED NOVEMBER 10, 1938.           DECIDED FEBRUARY 6, 1939.

COKE, C. J., PETERS, J., AND CIRCUIT JUDGE LE BARON IN PLACE OF KEMP, J., DISQUALIFIED.

860

OPINION OF THE COURT BY COKE, C. J.

In 1933 the Territory of Hawaii, the appellee above named, in order to construct a portion of the Kamehameha Highway in the districts of Moanalua and Halawa, City and County of Honolulu, was faced with the necessity of acquiring a right of way through certain lands owned by the estate of S. M. Damon, the estate of Bernice P. Bishop and the estate of Emma Kaleleonalani (better known as Queen Emma). These lands were at the time under lease to the appellant, the Honolulu Plantation Company, Limited. The total area required by the Territory for highway purposes was approximately forty acres of which twenty-eight acres were sugar cane-bearing lands. In order to expedite the construction of the highway, which appeared to be a matter of public importance at the time, the Territory and the Honolulu Plantation Company, Limited, entered into an agreement in writing, dated October 19, 1933, by the

terms of which the Territory was authorized to enter upon the lands and to proceed with the construction of the road, the Territory agreeing that it would, within a short stipulated period, institute condemnation proceedings for the acquisition of the lands required by it and would reimburse the appellant for any property taken and for all damages suffered, which damages to be awarded should be ascertained as of the date of the filing of such proceedings or as of the date prior to the entry upon the property by the Territory, whichever should be earlier. The action was instituted and possession of the property was taken over by the Territory concurrently, to wit, November 15, 1933. The Honolulu Plantation Company, Limited, appellant herein, and the trustees of the three estates, namely, the Damon, Bishop and Queen Emma estates, were all named as respondents in the action. Prior to the trial of the cause in the court below the Territory acquired by purchase or exchange the interests of the said three estates in the property sought to be condemned so that from that time hence the remaining issues in the proceedings were solely between the Territory and the present appellant, the Honolulu Plantation Company, Limited, lessee of the lands involved.

Some time before the purchase of the interests of the Damon estate the Territory and the trustees of that estate, as well as the Honolulu Plantation Company, Limited, entered into a stipulation which, because of its important bearing upon both the questions of law and fact involved in this appeal, will be set out in full and is as follows: "IT IS HEREBY STIPULATED AND AGREED by the parties hereto that: 1. The several parcels of land described in the petition herein as Parcels 64, 65, 66, and 67, comprising a total area of 23.844 acres, are the property of the Trustees of the Estate of Samuel M. Damon, deceased, and that the Honolulu Plantation Company has a leasehold interest therein, and that said parcels of land, exclusive of growing

crops and other improvements thereon, are of the aggregate value of $10,133.70; 2. The value of the lessors' interest therein as of November 15, 1933 was the sum of $9,291.13 and the value of the lessee's interest therein as of November 15, 1933 was the sum of $842.57, both figures being exclusive of growing crops or other improvements thereon; 3. The petitioner having taken immediate possession of said land, shall pay to said Honolulu Plantation Company the rental it has paid or will pay to said Trustees for said land from November 15, 1933 to the date of judgment, which rental was and is the sum of $493.54 per annum; 4. That as between the said lessors and the lessee the rent paid under their lease for said land shall be abated as of the date of the judgment to be entered in this suit and which rent shall be computed at the rate of $493.54 per annum; and 5. That nothing herein contained shall affect or be prejudicial to the rights of the Honolulu Plantation Company or the Territory of Hawaii regarding the claim of the Honolulu Plantation Company for reimbursement for the (1) value of the growing crops on the said land, (2) value of the improvements on the said land, and (3) damages suffered by it by reason of the taking of the lands sought to be condemned by the above entitled proceedings; and that nothing herein contained shall vary or modify or be deemed to vary or modify the terms of any other stipulations or agreements heretofore entered into between the Territory of Hawaii and the Honolulu Plantation Company."

At the inception of the trial of the cause in the court below it was agreed between the parties and without prejudice to appellant's right to claim additional damages that by reason of the appropriation the appellant was damaged as follows: Value of growing crops $1388.85, value of buildings $325, value of railroads and damage thereto $13,768.45, value of irrigation ditch $1955, value of leasehold interest in Damon estate land condemned $842.57, value of lease-

hold interest in Bishop estate and Queen Emma estate lands $346, and that appellant was entitled to the further sum of $867.61 as reimbursement of rentals in respect to lands condemned which had been prepaid by appellant. To these items the trial court added: $392.52, cost of construction of plantation railroad crossings over the new highway, $143.25, cost of installing traffic light at crossings and $271.85, cost of additional pipe line made necessary because of the highway construction. These separate items, amounting to $20,301.10, were found by the trial judge to be the total amount of damages suffered by appellant and judgment was accordingly rendered against the Territory for that amount.

The appellant, the Honolulu Plantation Company, Limited, comes here on a bill of exceptions. The numerous exceptions may be summarized as presenting for the consideration of this court: 1. Failure of the circuit judge to award damages to the plantation company's remaining properties in the sum of at least $18,000 over and above the amount of the judgment, 2. failure of the circuit judge to award specific damages in the amount of $4239.05 over and above the amount of the judgment, and 3. failure of the circuit judge to award interest upon the judgment entered.

Preliminary to a discussion of the exceptions imposed in group 1 a brief outline of the corporate purposes and activities of the Honolulu Plantation Company, Limited, and a discussion of its realty holdings in the vicinity of the land taken by the Territory will aid in a better understanding of the issues involved.

The appellant is engaged in the growing of sugar cane and the manufacture of cane and sugar. It has been properly referred to as a leasehold plantation. The entire plantation consists of approximately 5500 acres of land suitable for cane growing. Of this entire area the company owns in fee simple about 250 acres; the remaining 5250 acres are

owned by the Damon estate, Queen Emma estate, Bishop estate, Austin estate, L. L. McCandless and the Oahu Railway and Land Company, under whom the appellant occupies these several holdings as lessee. The Bishop estate and Queen Emma estate leases terminate in the year 1940; the Damon estate lease terminates on January 1, 1944. The record contains no reference to the date of termination of the leasehold interest of appellant in the lands of McCandless, the Austin estate or the Oahu Railway and Land Company, although it is shown on defendant's exhibit 3 that these latter leaseholds contain a very large area of the lands occupied by appellant. The fee simple land of appellant is composed of six or seven noncontiguous lots interspersed among the leaseholds. It is also to be noted that some of the leasehold property, particularly the lands of the Bishop estate, the Queen Emma estate and the Damon estate, do not consist of adjacent property but each consists of noncontiguous lots. The leasehold and fee simple lands operated by the appellant as a sugar plantation extend in a general direction from near the Rodgers Airport in a northerly direction to the Waiala stream in the Ewa district for a distance of more than seven miles and from east to west it extends some five miles.

The areas taken by the Territory for the highway traverse one each of the tracts included within the Bishop estate, Damon estate and Queen Emma estate leases. None of appellant's fee simple land nor its leasehold property demised to it by McCandless, the Austin estate or the Oahu Railway and Land Company is included within the condemned area.

There is in force in this jurisdiction a statute prescribing certain rules which govern the fixing of damages to be paid to the owner. It reads: "In fixing the compensation or damages to be paid for the condemnation of any property, the value of the property sought to be condemned and all

improvements thereon, shall be separately assessed; and if the property sought to be condemned constitutes only a portion of a larger tract, the damages which will accrue to the portion not sought to be condemned by reason of its severance from the portion sought to be condemned, and the construction of the improvements in the manner proposed by the plaintiff shall also be assessed; and also how much the portion not sought to be condemned will be benefited, if at all, by the construction of the improvement proposed by the plaintiff; and if the benefit shall be equal to the amount of compensation assessed for the property taken, and for damages by reason of its severance from another portion of the same tract, then the owner shall be allowed no compensation, but if the benefits shall be less than the amount so assessed as damages or compensation, then the former shall be deducted from the latter and the remainder shall be the amount awarded as such compensation or damages." R. L. 1935, § 63.

The appellant urged in the court below and reiterates here that, under the doctrine of severance recognized in the foregoing statutes and the fifth amendment to the Constitution of the United States, which guarantees that private property shall not be taken "without just compensation," it was entitled to show that, due to the severance of the property condemned, all of the remaining fixed property of the plantation, both fee simple and leasehold, mills, pumping plants, irrigation system and all other types of property which could not be readily removed, was depreciated in value by reason of the taking of the property condemned and that this constituted a proper element of damage. The position of counsel for appellees reflected in their interrogatories propounded to Mr. Greene and Mr. Scott, witnesses for the appellant, and offers of proof made by them. As an example: After Mr. Scott had testified that the appellant would suffer a loss beyond the stipulated sums by reason of

the taking of the property in question, he was asked by appellant's counsel: "Just what would the elements be that would make up the additional loss?" He answered: "It would be the lesser value of the remaining properties, occasioned by the fact that there are certain costs which are borne by the entire plantation, and the costs would not be reduced proportionately with the reduction in area because of the land condemned and taken by the government; also the elements that would inhere in the location of the lands, the fact that they were among the most productive, lying practically level, and lying at an elevation which might have rapid-growing time as well as low cost, because of the fact that water did not have to be pumped up to great heights. Also the element of increased costs on areas adjacent to the road because of the cutting up of areas by the road passing through, cutting into two pieces what was formerly one large piece which could be operated economically." (Tr. p. 60.)

And while Mr. Scott was still on the witness stand counsel for appellant offered to prove by him "that the properties of the Honolulu Plantation Company, consisting of leaseholds, a small amount of fee simple, and the improvements on the leaseholds and the fee simple, consisting of railroads, camp buildings, pump and pumping equipment, mill and factory, and the machinery forming a part thereof, domestic water distribution system for the camps, electric light and power distribution system, maintenance shops and irrigation water distribution system for the fields, but excluding from such improvements personal property readily removed and that would have a substantial value disconnected from the land and improvements, were worth less, immediately after the taking, by the sum of forty-three thousand six hundred and twenty-five dollars than the same properties, including those taken, were worth immediately before the taking, and that the differ-

ence between said sum of $43,625., and the sum of $18,625., which latter sum is the agreed value of the crops, buildings, railroads and irrigation ditch on the land taken, and the value of the lessee's interest in the land taken, and which difference is the sum of twenty-five thousand dollars, represents a loss to the Honolulu Plantation Company and its said properties over and above the amount the government agrees to pay." (Tr. p. 71.)

The trial judge denied the offers of proof and held that the elements of damage which appellant was endeavoring to show were entirely too remote, conjectural and speculative. The rulings rejecting the evidence and denying the offers of proof are made the subject of appellant's exceptions numbers 3 to 12, inclusive, 13 to 16, inclusive, and 18 to 21, inclusive. The general rule is that where only a part of a tract of land is taken in exercise of the power of eminent domain the just compensation which the fifth amendment to the Constitution guarantees the owner includes not only the value of the part taken but also the damage accruing to the residue. The measure of the damage is the injury done to the fair market value of the entire tract by the taking of only a part. In other words, the owner is entitled to recover the difference between the market value of the entire tract before the taking and the market value of what is left after the taking. (20 C. J. 730-732.) In the case at bar appellant made no attempt to show the market value of the property or the difference between such market value before and after the taking nor did appellant attempt to overcome the natural presumption that the property was marketable but confined itself to an attempt to show, by what the circuit judge described a "holus bolus" method, that the numerous items of fixed property owned by it had been depreciated in value as a whole and in a lump sum by reason of the taking of the area in question.

It was the purpose of counsel for appellant, as clearly indicated by the tenor of the questions propounded by them to witnesses Scott and Greene and by their offer of proof, to establish damages by eliciting from the witnesses testimony to the effect that because of the taking of the small area of land involved in the proceeding all property owned by appellant of every type and description and wheresoever located, except readily removable personalty, was damaged by the taking. That is, that the remaining 5460 acres of cane land composed of sundry areas of noncontiguous property held in fee and of large areas of leaseholds, some contiguous and others noncontiguous, some of which were under leases expiring in seven years, others in eleven years, while still others were of undisclosed duration, and the improvements, including buildings, mills, shops, pumping stations, machinery, plantation railroads, irrigation system and many other items of property owned by appellant and utilized by it in the operation of its sugar enterprise as a whole, came within the scope of the questions and the offers of proof and in this manner a large portion of the amount of damage which appellant claims was ascertainable.

Counsel for appellant concede that the rule of damage applicable to a case of this nature is "subject to the limitation that the damages claimed must be such as directly result from the condemnation and that injuries or damages which are remote, conjectural or speculative should be excluded from consideration." They however urge that because there were certain overhead operating costs of the plantation, such as manager's salary, repairs to buildings, railroads, factories, road maintenance, etc., which were static and could not be reduced (although Mr. Greene testified that only a portion of such cost was definitely ascertained), as a result of the withdrawal the appellant's remaining fixed properties would be burdened with an in-

creased overhead operating cost which would automatically depreciate the value of such properties. It may be that to a slight degree the effect would be as claimed by appellant. But as an offset it would also follow that there would be a saving to the plantation in such items as plowing, planting, cultivation, irrigating, milling, transportation, warehouse charges, taxes and in sundry other respects but in no case could the loss, if in fact one actually accrued, be ascertained with even approximate accuracy. Hence the questions and offers of proof, if they had been allowed by the trial judge, would have projected the inquiry into the realms of speculation and conjecture to an impracticable and unprecedented degree.

*Chicago, Burlington etc. R'd* v. *Chicago,* 166 U. S. 226, was an eminent domain case where the City of Chicago sought to acquire for street purposes a part of a right of way owned by the railroad company within the city limits. In its appeal the company complained of the refusal of the trial court to instruct the jury to the effect "that if the land of the railroad company to be crossed by the proposed street was used by it for railroad purposes as part of 'its railroad and terminal facilities,' and the value of such railroad and terminal facilities would be depreciated and lessened by the use of the land by the public for the purposes of a street * * * then the railroad company was entitled to recover from the city a sum equal to such depreciation in value as damages to part of its land not taken or crossed by the proposed street." The Federal Supreme Court, in sustaining the lower court, said: "This instruction was properly refused. It was objectionable for the reason, if there were no other, that it was too general. The words 'its railroad and terminal facilities' included the company's entire line of road and terminal facilities within, at least, the corporate limits of the city. The land within the crossing is three miles inside the city limits,

about four miles from the passenger depot of the company and a thousand feet from its nearest freight depot. If the instruction last referred to had been given, the range of inquiry as to the sum due the company for what was taken from it would have been extended far beyond what was required or permissible in order to ascertain the amount of compensation."

Appellant has called to our attention a number of cases in which the subject is discussed, including *Monongahela Navigation Co.* v. *United States,* 148 U. S. 312; *Essex Storage Electric Co.* v. *Victory Lumber Co.,* 108 Atl. 426, and *Louisiana Highway Commission* v. *Guidry,* 146 So. 1. The opinion in the *Monongahela Navigation Co., supra,* case is a scholarly discussion of the doctrine and emphasizes the principle that where the right of eminent domain is invoked in order to take private property for public uses "the compensation must be a full and perfect equivalent for the property taken," and that Congress is without power or right to determine what shall be the measure of compensation to which the owner is entitled because that is a judicial and not a legislative matter. In *Essex Storage Electric Co.* v. *Victory Lumber Co., supra,* the court held that where two or more tracts of land are affected by the taking of a part of or all of one of such tracts contiguity is not always the controlling question although the court concedes that generally speaking the requirement of contiguity affords the correct basis for the measure of damages. This case, as well as the two other State cases referred to, involved facts so wholly dissimilar to the one at bar as to render them of slight, if any, assistance. We think the questions and offers of proof were entirely too general and comprehensive and were properly excluded by the trial judge.

In the second group of exceptions the appellant complains of the refusal of the trial court to allow recovery

for specific damages suffered by it in at least the sum of $4239.05 over and above the sum of $807.62 awarded by the court as a result of the severance of its fields numbers 62, 81, 82 and 83 (see appellant's exhibit 6) so that each of said fields was separated into two tracts of land, one lying above and another below the highway; also the necessary maintenance of the watchman at highway crossings during harvesting seasons, construction of railway crossing, ditches, etc. Mr. Scott testified that the damage to the fields which were severed by the highway and the direct and necessary outlay which would be required of appellant because of the appropriation amounted to the total sum of $4239.05 over and above the amount awarded by the court. This type of damage, we think, comes within the contemplation of our statute which authorizes severance damages. It is similar to the element of damage approved in *Maxwell* v. *Iowa State Highway Commission,* 265 N. W. 899, and *Louisiana Highway Commission* v. *Guidry, supra,* and many other decisions of similar import.

In the absence of a showing that the land severed by the highway is not marketable the usual and recognized method of establishing severance damage is to prove the market value of the property before and after the taking. If damage has resulted the amount of such damage would be the difference between the two figures. No attempt was made by appellant to show that the property did not have a market value and in the absence of any such showing its method of establishing damages was objectionable. No objection, however, having been made by appellee to the method of proof, this element of damage should go back to the trial court for admeasurement of such damage, if any, as appellant may be entitled to by reason of the severance of fields 62, 81, 82 and 83.

The third and last group of exceptions challenged the action of the trial court in denying interest to appellant

on any of the items which made up the final award until the expiration of thirty days after the judgment was docketed. The trial judge held that as the parties had agreed upon the value of the lessee's interest in the land actually appropriated, the value of growing crops of cane destroyed, the value of buildings removed and railroads and damages thereto, amounting in all to the sum of $18,625.87, this sum so stipulated included all interest which otherwise would have been allowable from the date of the summons. Technically speaking, interest, as such, is not allowed in a proceeding of this nature prior to judgment. What is commonly called interest is in fact an additional award of damages for injury caused to the owner by the "blight of the summons" because from the time of the institution of the suit the owner can claim nothing for added improvement nor is he entitled to benefit by any advance in the value of the property, but this element of damage should become a part of the award so that the owner may have that "just compensation" granted to him by the fifth amendment to the Federal Constitution. This element of damage is not dependent upon any statutory authorization. (See *Jacobs* v. *United States*, 290 U. S. 13.)

We can find nothing in any of the agreements or stipulations between the parties sustaining the conclusion that it was the intent of the appellant to waive interest to which it otherwise would have been entitled. That is, interest at the agreed rate of six per cent upon the value of appellant's leasehold interest in the land appropriated, the value of the growing crop of cane and the buildings demolished from the date of the summons and interest upon the expenditure of $13,768.45 for relocating and constructing railroads and upon the several other items which go to make up the total judgment of $20,301.10 from the dates of such several expenditures as shown by the evi-

dence, exhibits and other records in the cause.

The courts have repeatedly held that just compensation rests on equitable principle and it means substantially that the owner should be put in as good a position financially as he would have been had his property not been taken. The subject was discussed in *Weiser Valley Land & Water Co.* v. *Ryan,* 190 Fed. 417, in an appeal from a judgment allowing interest on the judgment from the date of summons in a condemnation suit, the court saying: "The next contention is that the court erred in adding interest to the amount of the assessment from the date of the summons. Under the statute, the right to the compensation shall be deemed to have accrued at the date of the summons. Having such right to compensation at a given time, it would seem that the owner ought to have interest upon the amount ascertained until paid. In the meanwhile he can claim nothing for added improvements, nor is he entitled to any advance that might affect the value of the property."

The statute of the State of Idaho under discussion in the *Weiser* case is strikingly similar to section 64, R. L. 1935. This section reads: "For the purpose of assessing compensation and damages, the right thereto shall be deemed to have accrued at the date of summons, and its actual value at that date shall be the measure of valuation of all property to be condemned, and the basis of damage to property by reason of its severance from the portion not sought to be condemned, subject, however, to the provisions of section 63. No improvement put on the property subsequent to the date of the service of the summons shall be included in the assessment of compensation or damages."

In *United States* v. *Rogers,* 255 U. S. 163, 169, the court, speaking through Mr. Justice Day, said: "We agree with the courts below that the allowance of just compensation

by giving interest from the time of taking until payment is a convenient and fair method of ascertaining the sum to which the owner of the land is entitled." (See also *United States* v. *First Nat. Bank,* 250 Fed. 299; *Seaboard Air Line Ry.* v. *U. S.,* 261 U. S. 299.)

Our conclusion is that such of appellant's exceptions which complain of the refusal of the trial court to allow any damages to appellant caused by the severance by the construction of the highway of its leasehold areas as appear on defendant's exhibit 3, the cost of the maintenance by appellant of a watchman during harvest season at highway crossings and the disallowance by the court of interest on the several amounts as hereinabove specified should be and they are sustained and all other exceptions having been duly considered are overruled and the cause is remanded to the circuit court for action in accord with this opinion.

*Stanley, Vitousek, Pratt, Winn* and *Kay* for appellant.

*S. B. Kemp,* Attorney General, and *Chuck Mau,* Deputy Attorney General, for the Territory.