EDITH HENRY BARBOUR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 100714. Promulgated July 29, 1941.

*John M. Hudson, Esq.*, and *Samuel E. Gawne, Esq.*, for the petitioner.

*Homer J. Fisher, Esq.*, for the respondent.

# 1118

OPPER: This proceeding involves a deficiency in income tax for the year 1937 in the amount of $816.11 and a claimed overpayment for the same year in the amount of $5,655.

Petitioner filed her income tax return for the year in question with the collector of internal revenue for the district of Michigan.

Two questions are presented: Whether a sum paid to petitioner as "interest" on a condemnation award is taxable as ordinary income, or as part of the capital gain from the condemnation, and whether petitioner, who retained possession of the condemned premises after the condemnation judgment and until payment of the award, is entitled to an allowance for the depreciation of the condemned premises during that period.

We adopt as our findings the stipulated facts. From these it appears that petitioner acquired by inheritance in 1922 an undivided one-half interest in three parcels of real estate fronting on Woodward Avenue in Detroit, upon which were located three buildings which since that time have been used in petitioner's trade or business.

In July 1927, following the approval by the voters of the city of Detroit of a plan for widening Woodward Avenue, the city's common council passed a resolution of necessity for the improvement, the resolution being conditioned upon the signing of financing agreements by at least 75 percent of the property owners to be affected. Such agreements were necessary because of the inability of the city to comply with title VIII, chapter I, section 16 of its charter and section 3801, Compiled Laws of Michigan, 1929, requiring payment for condemned property to be made within one year after confirmation of the condemnation award and prohibiting the taking of possession until payment has been made. The required number of property owners signed such agreements, although petitioner and her joint owner did not.

Pursuant to its charter provisions relating to condemnation, the city, on or about November 17, 1927, filed with the recorder's court of the city a petition setting forth that the city had declared the necessity for widening Woodward Avenue and that to accomplish that purpose it was necessary to condemn certain property, including 20 feet of the premises occupied by the three buildings in question. The proceedings were thereafter brought on for trial, resulting in a written jury verdict rendered on February 16, 1932, finding the taking of the requisite portions of the three parcels to be necessary and awarding the compensation therefor, the sum of $180,935.90 being fixed for the condemned portion of the parcel occupied by one of the buildings. On July 21, 1932, the verdict as to necessity and damages or compensation was confirmed by the recorder's court,

resulting in the condemnation of 20 feet of the premises occupied by the three buildings.

On November 26, 1937, the city paid to petitioner and her joint owner the sum of $180,935.90, being the amount of the award for the condemned portion of one parcel as aforesaid. This sum was deposited by the joint owners in a special building account with a bank, and petitioner duly filed with the Commissioner of Internal Revenue an application to establish a replacement fund with respect to her share of $90,467.95. On November 26, 1937, her share of the award exceeded her portion of the cost basis of the land and building which had been condemned and for which the award was paid. The judgment award for the condemned portions of the other two parcels had not been paid by the city at the time of the hearing herein, and possession of no part of the condemned portions of any of the three parcels had as yet been taken by the city at that time.

On December 21, 1937, the city paid to petitioner and her joint owner the further sum of $48,345.97, being interest upon the award of $180,935.90 from July 21, 1932, the date of confirmation of the award, to December 21, 1937, at the rate of 5 percent per annum, as prescribed by section 14555, Compiled Laws of Michigan, 1929. Petitioner appropriated to her own uses her one-half share of the $48,345.97, and upon her income tax return for 1937 she reported $24,172.98 representing her share of the interest, as income taxable in full. She now contends that the sum of $24,172.98 is taxable as capital gain rather than as ordinary income.

During the years 1932 to 1937, inclusive, petitioner received and retained her one-half share of the rentals of the entire three buildings, and beginning with the year 1933 the city eliminated the condemned portion of the properties from city taxation.

This case is similar to and controlled by *Estate of Edgar S. Appleby*, 41 B. T. A. 18, unless distinctions between the procedure in Michigan, as pursued in the present case, and in New York in the *Appleby* case, require a different result. See also *Henry A. Kieselbach*, 44 B. T. A. 279; *Seaside Improvement Co.* v. *Commissioner* (C. C. A., 2d Cir.), 105 Fed. (2d) 990; certiorari denied, 308 U. S. 618. In the *Appleby* case property of the petitioners was acquired in condemnation proceedings by the city of New York. After the acquisition $683,555.50 was awarded for the property. When payment was made "the city paid to the petitioners $751,129.45, of which $67,573.95 was an increase in the original condemnation award because of the lapse of time between condemnation and payment." The Board held that the latter item "is part of the award and not interest." The question here is the same. If petitioner is correct that the amount added to the original award is not interest,

her proposed treatment of the amount as capital gain must be approved.

Respondent seeks to distinguish the *Appleby* case on two grounds, first, that the New York law permits taking prior to payment, whereas in Michigan the public authorities are not permitted to enter upon the property until payment has been made or set aside; and, second, that under New York law the "interest" is declared by statute to be payable "as a part of the compensation" whereas in Michigan it is treated as similar to interest upon a judgment.

In our view neither of these distinctions is persuasive. We are unable to accept the requirement that compensation must be paid before entry as adequate to distinguish the cases. The compensation is paid for the property, which includes both title and the right to possession. Without attempting to consider whether there was a passage of title upon completion of the condemnation proceedings, see *Cleaver* v. *Board of Education*, 263 Mich. 301; 248 N. W. 629, it is at least clear that under Michigan law there was a "constructive taking" at that time. *Campau* v. *City of Detroit*, 225 Mich. 519; 196 N. W. 527. From the standpoint of depriving the owner of the ordinary rights of disposition and management, this seems to us sufficiently to resemble the actual taking which occurs in New York. And, if the city must make payment prior to acquiring possession as the final element of ownership, there is, if anything, an added reason for concluding that all items of the payment made at that time are components of the compensatory price received by the owner for parting with the complete bundle of rights constituting ownership.

Respondent contends, in effect, that it is only where the property is taken prior to payment that "it appears to be 'uniformly held' that payment of interest constitutes a payment of 'damages' and is part of the 'just compensation' required by the Constitution." If in fact, however, the total amount received by the petitioner for the property was greater by reason of an addition to the original award caused by delay in payment, it seems to us to make little difference whether this additional compensation was required by the Constitution or proceeded from some statutory provision or public policy of the State of Michigan.

Respondent does not contend that for tax purposes a distinction should be drawn between "just compensation" for the property, as a capital item, and "just compensation" for the use of petitioner's money, as an income item, and the cases dealing with the adequacy of compensation generally to which he refers attempt no such classification. If he did, the same objection could be taken to the result reached in the *Appleby* case. Nor does he dwell upon the possibility that even where possession precedes award, there may be a further

interval prior to payment, as there was in the *Appleby* case, compensation for which can not presumptively be included in the original award. We think it clear that the amount received by petitioner, including that attributable to the delay in payment, was compensation. Whether it was constitutionally required can not, in our view, affect the question before us, which is the extent to which it may be considered as a capital gain on the one hand or ordinary income on the other.

Nor do we regard as an adequate distinction the failure to specify that the "interest" is part of the award. That it is compensatory appears with sufficient certainty, as we have seen, from the requirement of payment before entry. Thus the minor difference in Michigan's statutory structure is without significance. True, there is no express provision that the additional payment is to be included in the award. But under Compiled Laws of Michigan (1929), section 3801, there must be set aside in the city treasury before the city can take possession of the property "the amount required to make compensation." This includes such additional sum as is required by law on account of delay in payment. *Rosen* v. *City of Detroit*, 242 Mich. 690; 219 N. W. 726. Whether there be two awards or one, the whole is necessary to pay for the property. It follows that the respondent's action in this respect was error.

The second issue relates to petitioner's claim for depreciation on the property subsequent to the condemnation proceedings and prior to relinquishment of possession. On this item we think respondent's action was correct. While ownership may not be a prerequisite to the right to a depreciation deduction, see *Helvering* v. *Lazarus & Co.*, 308 U. S. 252, it is conversely true that not even ownership necessarily entitles the owner to deduct depreciation. The test is whether the claimant to depreciation is in such a position as to suffer an economic loss as a result of the decrease in value of the property due to the depreciation. *Weiss* v. *Wiener*, 279 U. S. 333; *Atlantic Coast Line Railroad Co.*, 31 B. T. A. 730; affd. (C. C. A., 4th Cir.), 81 Fed. (2d) 309; certiorari denied, 298 U. S. 656. Here we think it apparent that petitioner can not bring herself within such a classification.

When judgment was entered upon the award and no appeal taken, the rights and obligations of the parties were legally adjudicated and fully fixed. The amount of defendant's indebtedness for the land it compelled plaintiff to sell was as finally and forcibly determined as by any other judgment * * *. [*Campau* v. *City of Detroit, supra; Rosen* v. *City of Detroit, supra.*]

The date of payment of the condemnation awards might be uncertain, and even their ultimate amount for that reason incapable of computation; yet there is nothing to indicate that they will be diminished by reason of any change which may take place in the character

of the property, and still less, by reason of any of the natural processes of deterioration compensation for which is theoretically furnished by the depreciation deduction. Since petitioner will never be the poorer by reason of depreciation, there is no necessity of permitting her to deduct an amount from current income for the purpose of making herself whole in that contingency.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

ARUNDELL and BLACK dissent for the reason set forth in their dissent in *Henry A. Kieselbach,* 44 B. T. A. 279.