Kavanaugh H. Francis v. Commissioner. Alma Sanders Francis v. Commissioner.
Kavanaugh v. Commissioner
Docket Nos. 9624, 9858.
United States Tax Court
1949 Tax Ct. Memo LEXIS 219; 8 T.C.M. (CCH) 346; T.C.M. (RIA) 49086; April 15, 1949
George A. LeMaistre, Esq., and Winston B. McCall, Esq., for the petitioners. Homer F. Benson, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion These proceedings, consolidated for hearing, involve deficiencies in income taxes for Kavanaugh H. Francis, for the years 1938 and 1939, in the respective amounts of $2,473.44 and $4,309.09, and for Alma Sanders Francis, for the years 1938 and 1939, in the respective amounts of $713.06 and $479.35. The questions presented are whether the petitioners were residents of the State of Texas and entitled to make separate income tax returns on the community income basis during the taxable years 1938 and 1939, and whether deductions claimed by the petitioners for losses, bad debts, automobile expenses *220 and depreciation on business property during the taxable years 1938 and 1939 were properly redetermined or disallowed by the respondent. Findings of Fact The petitioners, Kavanaugh H. Francis and Alma Sanders Francis, are husband and wife. They filed separate individual income tax returns on the community income basis for the taxable years 1938 and 1939 with the collector of internal revenue for the second district of Texas, at Dallas. The petitioners were married in 1913 in the State of Alabama. After living together in Alabama for several years and in Arkansas for a few months they moved to Timpson, Texas, in 1918. There Kavanaugh H. Francis, hereinafter referred to as the petitioner, took charge of the Timpson Compress Company. The following year the petitioner purchased stock in that company and has continued to work for it until the present time. The petitioner and his wife occupied the same house in Timpson from 1918 to 1936, when the house burned. At that time they moved into another house in Timpson, which they had previously purchased, and have lived there continuously until the present time. They kept this house furnished and supplied with water, gas, and electric *221 service without interruption from 1936 through 1938 and 1939, the taxable years here involved. The house has never been rented to any tenant since the petitioner and his wife occupied it in 1936. The petitioner and his wife owned real property in Timpson in 1938 and 1939, consisting of two brick business buildings, fifteen lots, a lumber and planer mill and the house and grounds where they live. They paid taxes to the City of Timpson and to the State of Texas in 1938 and 1939, claiming a homestead exemption for state tax purposes on the house they occupied. The petitioner and his wife have never owned real property or paid real property taxes in any state other than Texas. The petitioner and his wife are registered voters in Timpson, Texas, and have voted there in every election except one since 1920. Poll taxes for both the petitioner and his wife were paid to the State of Texas for 1938 and 1939. The petitioner has been politically active in Timpson and served as a member of the city council from 1922 to 1930 and as mayor of the city from 1930 to 1933. The petitioner has maintained an active bank account in the Cotton Belt State Bank of Timpson for many years and was a member *222 of the board of directors of that bank from 1926 to 1938. He has been a member of the Baptist Church of Timpson since 1922 and a member of the fraternal order of Masons in Timpson since 1919. Prior to 1938 and 1939, and during those years, the petitioner maintained active charge accounts in several stores in Timpson. He also paid city taxes there. The license tags for the petitioner's two automobiles and his driver's license were obtained from the State of Texas. The petitioner's three children all attended high school in Timpson and later completed their educations at the University of Alabama at Tuscaloosa, Alabama. One or more of the three children were in Tuscaloosa as a university student from 1931, when the oldest child entered the university, until 1940, when the youngest child completed his work there. During the period from 1935 to 1940 the petitioner rented a house in Tuscaloosa for the use of his children while they were attending the university, and his wife spent a substantial part of her time there keeping house for them during sessions of the university. During 1938 and 1939 the three children were all in one place or another in Alabama, and the petitioner's wife spent *223 about one-half of her time in Alabama and one-half in Texas. The petitioner visited his wife and children occasionally in Tuscaloosa when his business permitted him to do so but never stayed there for more than brief visits. The petitioner's business interests and activities were centered in Timpson. In addition to owning stock in the Timpson Compress Company and in the Cotton Belt State Bank of Timpson, the petitioner also owned stock in the Jacksonville Compress Company at Jacksonville, Texas; the Dublin High Density Compress & Warehouse Company at Dublin, Texas; the Tuscaloosa Compress Company at Tuscaloosa, Alabama; the Cullman Compress & Warehouse Company at Cullman, Alabama; and the Blytheville Compress Company at Blytheville, Arkansas. The petitioner was an officer and director and was active in the operations of all these companies, making frequent visits to their operating plants. He made Timpson his operating headquarters, returning there after his frequent visits to the various companies in which he had interests. Timpson was approximately in the geographical center of his activities. The petitioner and his wife were legal residents of the State of Texas during 1938 *224 and 1939. The Cotton Belt State Bank of Timpson maintained in 1937 an account known as the "K. H. Francis Cotton Margin Account, R. F. Molloy". Molloy was a cotton broker who traded in substantial amounts of cotton. The petitioner had previously given the bank a letter of guaranty against any loss on the Molloy account. His purpose in guaranteeing the account was two-fold. First, he was to receive 25 per cent of any profits earned from the account and, second, he used this means to secure the business of handling the Molloy account for the Timpson Compress Company, of which he owned 80 per cent of the stock. Transactions during 1937 had reduced the margin on deposit in this account to $1,611.19. In November, 1937, Texas state bank examiners advised the bank that the Molloy account was not safe and demanded that the bank have more margin on deposit to protect it until the account could be liquidated. Pursuant to the demand of the bank that he deposit the required additional margin the petitioner deposited $10,000 in cash in the account on November 20, 1937. Afterwards the market price broke on the cotton held by Molloy and the bank proceeded with the liquidation of the Molloy account. *225 Molloy was indicted by a federal grand jury in October, 1938, in connection with the use of fictitious names in securing loans on cotton from the Commodity Credit Corporation and was convicted and sentenced to a term in a federal penitentiary in 1939. Additional deposits were made in the account in 1938 by withdrawals from Molloy accounts in other banks, but the movement of the cotton in settling out the account resulted in the loss of the entire margin on deposit. The bank completed liquidation of the account on December 23, 1938, by charging out the remaining amount on deposit on that date. The amount of $10,000 which the petitioner had on deposit to support the Molloy account was thus lost to him through the final liquidation of the account. The petitioner concluded that the Molloy obligations were worthless in December, 1938, and charged off the $10,000 as a loss of that year. In 1938 Molloy bought 879 bales of cotton in Kilgore, Texas, which were paid for by the Texas State Bank of Jacksonville, Texas, for the petitioner's account with it. In 1939 the Shelby Cotton Company, the export company for the Molloy cotton business, liquidated 426 bales of this cotton. The petitioner *226 settled the Shelby Cotton Company claim for fees and expenses in connection with this liquidation for $401.64. The remaining 453 bales of this cotton were disposed of by the Texas State Bank in 1939 at a loss of $2,197.74, which the petitioner paid to the bank in 1939 from his account with that bank. These losses on the account of $401.64 and $2,197.74 were sustained by the petitioner from cotton transactions which he had entered into for a profit. In 1939 the Cotton Belt State Bank of Timpson charged the petitioner's Commodity Credit Corporation loan account with $43.74 which it had erroneously credited to it as profit in 1938. The petitioner and his wife had included this amount as a profit in their 1938 income tax returns, and, after correction of the error in 1939, they deducted the amount as a loss in their 1939 returns. The petitioner and his wife deducted as a bad debt in their 1939 income tax returns $200 which the petitioner had paid in that year as a consequence of having guaranteed payment of a note for that amount by W. P. Langham. The bank which held Langham's note demanded payment from the petitioner in 1939 as surety on the note. The petitioner gave two personal *227 notes for the principal amount of the Langham note and paid off the notes in the same year. The petitioner owned two automobiles during 1938 and 1939, one of which was used by the family for pleasure and the other used by him for business. The petitioner traveled almost constantly by automobile in connection with his business interests in 1938 and 1939 in several states. He drove a total of 36,000 miles in 1938 and 40,000 miles in 1939, of which 10 per cent was for personal trips. The petitioner drove the remaining 33,000 miles in 1938 and 36,000 miles in 1939 in carrying on his business away from home. The petitioner and his wife deducted the expense of travel at 10 cents per mile in their 1938 and 1939 tax returns. The deductions on this mileage basis were intended to compensate the petitioner for his costs of gasoline, maintenance and repairs, tires and depreciation on his automobile based on a two-year estimated life. None of the petitioner's travel expenses were reimbursed to him in 1938 and 1939. The petitioner incurred deductible automobile traveling expenses of $1,980 in 1938 and $2,160 in 1939. In 1936 the petitioner purchased a business building in Timpson at a cost, *228 apart from the land, of $2,100. The building was of brick construction with metal roof and plate glass window in front. It was about ten years old at the time of purchase. The petitioner used the building as rental property and claimed depreciation on it in each taxable year thereafter at the rate of five per cent or $105 per year based on a useful life of twenty years from the time of purchase in 1936. The respondent disallowed the depreciation deductions claimed in 1938 and 1939. He now contends that depreciation should be computed on a useful life of not less than forty years. The petitioner purchased a brick building in Timpson in 1929 which was about twelve years old at that time. The building was in poor condition at the time of purchase, but the petitioner made extensive repairs, alterations and improvements to it soon after purchase, making the total cost of the building, apart from the land, $2,800. The petitioner estimated a remaining useful life for the building of twenty years and took depreciation of five per cent of cost or $140 each year from 1929 through 1938 and 1939. The respondent disallowed the deductions as claimed in 1938 and 1939. He now contends that the building *229 had a useful life of not less than forty years and that depreciation should be computed on that basis. In their 1938 tax returns the petitioner and his wife deducted depreciation in the amount of $600 for an oil well drilling rig. The petitioner had acquired the equipment in 1933 at a cost of $3,000 and had rented it for business purposes to persons exploring for oil. The equipment became idle in 1934 or 1935 and the petitioner stacked it for storage in Haslam, Texas. It was not used by the petitioner after that time. Before 1938 all or some parts of it had been taken off piece by piece by persons unknown to the petitioner on dates unknown to him. The petitioner had assigned the equipment an estimated useful life of five years when he acquired it and had recovered depreciation of $2,400 on it at $600 per year up to 1938. In their 1938 returns the petitioner and his wife deducted $600 as final depreciation on the equipment, listing it as fully depreciated in their 1939 returns. The respondent disallowed the depreciation claimed in the 1938 returns on the ground that the petitioner did not have possession or ownership of the equipment in 1938. Opinion LEMIRE, Judge: The respondent's *230 disallowance of the right of the petitioner and his wife to file separate income tax returns on the community income basis as residents of Texas is based on his conclusion that the petitioner and his wife were residents of Alabama in 1938 and 1939. The petitioners have produced convicing evidence that Timpson, Texas, was the place of their physical and legal residence in those years. The evidence is that the petitioners have owned real and personal property in Timpson and have continuously maintained a home there since 1918. The petitioner and his wife voted there exclusively and he was politically active there. They maintained an active account in a Timpson bank and active accounts in Timpson stores, paid state and local taxes and maintained active religious and fraternal affiliations there. Although the nature of the petitioner's business interests necessitated his frequent absence from Timpson, he always returned there, considering Timpson to be the location of his business headquarters and major interests as well as his home. The petitioner's children chose to attend and did attend the University of Alabama to complete their educations. The petitioner and his wife maintained *231 a house in Tuscaloosa, Alabama, for their children's occupancy during sessions of the university and the petitioner's wife spent a substantial part of her time there with the children. The petitioner himself was able to join them for occasional brief visits. However, the evidence is that the petitioner and his wife had no intention of ever making that their permanent home. The essential elements of legal residence are residence in fact and a present purpose to make the place of residence a home. Mitchell v. United States, 21 Wall. 350. Since the evidence is that the petitioner and his wife maintained a fixed permanent home in Timpson to which they invariably returned after temporary absence, we conclude that they were legal residents of Timpson, Texas, during 1938 and 1939 and were entitled to file separate income tax returns on the community income basis. Pietro Crespi, 44 B.T.A. 670. The petitioner contends that the amount of $11,611.19 which was on deposit in the Cotton Belt State Bank of Timpson in December of 1938 in the "K. H. Francis Cotton Margin Account, R. F. Molloy" was lost when the account was closed out in December, 1938, and that this *232 amount is deductible in 1938, either as a loss under section 23 (e) of the Internal Revenue Code or as a bad debt under section 23 (k) of the Code. The respondent disallowed the deduction on the grounds that this was not a fully realized loss in 1938 in a bona fide business transaction and that the transaction was entered into for the benefit of the Timpson Compress Company, not as a part of the petitioner's business or for his personal gain. The respondent is correct in his argument that the petitioner's expectation of realizing benefits as a stockholder in the Timpson Compress Company from the series of Molloy transactions did not entitle him to the deduction. However, under the agreement with Molloy and as consideration for guaranteeing the account to the bank the petitioner was to receive 25 per cent of any profits which might be earned on the account. This arrangement made the account a joint venture which the petitioner entered into for profit under section 23 (e) of the Code. A break in the market price of cotton, coupled with Molloy's indictment by a federal grand jury and pressure from state bank examiners, caused the bank to proceed with the liquidation *233 of the account. The liquidation became final on December 23, 1938, when the balance of funds on deposit, amounting to $11,611.19, were charged off and the account closed out. The bank's action in closing out the account was the identifiable event which determined the petitioner's loss. Any claim which the petitioner may have had for remuneration from Molloy was obviously worthless. Although the evidence is that there was $11,611.19 in the account in December, 1938, there is no evidence as to what part, if any, of the excess over $10,000 in the account was the petitioner's money. We conclude that the petitioner is entitled to the deduction of $10,000 as a loss in 1938 from a venture which he had entered into for profit. Abraham Greenspon, 8 T.C. 431. Additional losses of $401.64 and $2,197.74 resulting from a separate venture with Molloy are claimed by the petitioner and his wife in their 1939 tax returns. In that year the petitioner's cotton account with the Texas State Bank of Jacksonville, Texas, was liquidated with a similar loss to the petitioner of $2,197.74. The Shelby Cotton Company allowed the petitioner to settle the account with it for its expenses and fees *234 in connection with the transaction for $401.64. The petitioner had paid for the cotton which Molloy had bought through this account with the expectation of sharing in any profits which might be made on the venture. When the cotton was disposed of and all accounts had been settled, the venture ended. Molloy, in the meantime, had been sentenced to a term in a federal penitentiary and nothing remained from which the petitioner could hope to reduce his losses. We conclude that the amounts of $401.64 and $2,197.74 were properly deducted in 1939 as losses sustained in transactions entered into for a profit. In 1938 the Cotton Belt State Bank of Texas erroneously credited the petitioner's loan account in that bank with the amount of $43.74 as a profit on that account. The bank discovered its error in 1939 and charged that amount back against the account. Since the petitioner and his wife had reported the item in their 1938 income tax returns as taxable income, they deducted it in their 1939 returns as a loss. The petitioner's effort to adjust in 1939 an error which occurred in 1938 was erroneous. The correction of the mistake which increased income in 1938 should have been made in the returns *235 for that year when the error was made, not in the returns for 1939, when the error was discovered. The fact that the petitioner and his wife paid taxes on an item erroneously reported as income in a prior year does not make that item an allowable deduction in a later year. Farmers & Merchants National Bank, 8 B.T.A. 58; Sunburst Oil & Refining Co., 23 B.T.A. 829; Escanaba & Lake Superior Railroad Co., 24 B.T.A. 412. The petitioner and his wife claimed the deduction as a bad debt of $200 which he paid in 1939 as surety on a note which he had endorsed for W. P. Langham. Upon such payment Langham became obligated to him for that amount. There is no evidence of the worthlessness of the obligation either at the time the petitioner took up the Langham note at the bank or at the time he paid off the notes which he exchanged for it. We know nothing of Langham's situation or of the petitioner's prospects of ever collecting from him. In the absence of such evidence we must sustain the disallowance of the deduction by the respondent. As to the deductions claimed by the petitioner and his wife in 1938 and 1939 for automobile expenses the evidence is *236 that he drove 33,000 miles in 1938 and 36,000 miles in 1939 for business purposes. The petitioners claimed expense deductions based on an estimated cost of ten cents per mile. The evidence does not support their estimate. We recognize that keeping an exact record of his traveling expenses under the circumstances would have been difficult, if not impossible, but that does not relieve the petitioner of his burden of proving facts on which we can make a reasonable estimate. After consideration of all available evidence bearing on the petitioner's travel, we think that the petitioner's actual automobile expense which is deductible is $1,980 in 1938 and $2,160 in 1939. Cohan v. Commissioner, 39 Fed. (2d) 540; Kenneth Waters, 12 T.C. 414 (promulgated March 23, 1949). In their income tax returns for 1938 and 1939 the petitioners claimed deductions for depreciation on two business buildings which they owned in Timpson. Both buildings were of brick construction and were in good condition or were immediately put into good condition when the petitioner acquired them. One building was twelve years old and the other was ten years old. The petitioner assigned an estimated *237 useful life of twenty years to each building and then proceeded to claim depreciation on the buildings at the rate of five per cent per year prior to and including 1938 and 1939. The respondent contends that a proper estimated useful life of the two buildings was not less than forty years and that allowable depreciation should be reduced accordingly. The petitioner failed to produce any evidence as to the probable useful life of the buildings or as to the actual depreciation which they suffered in the taxable years. The respondent is sustained in his contention that depreciation should be computed on the basis of a useful life of not less than forty years. The final item for consideration is the deduction of $600 claimed in 1938 as depreciation on oil well drilling equipment. The petitioner acquired the equipment in 1933 at a cost of $3,000, assigned to it an estimated useful life of five years, and claimed depreciation at the rate of 20 per cent or $600 per year for the years 1934 through 1937. The equipment had been rented for oil exploration purposes in 1933 and 1934, but the petitioner had it stacked for storage in 1934 or 1935 when he could not find other lessees for it. Some *238 time after that all or some part of the equipment was stolen by parties unknown to the petitioner. Deductions for depreciation are allowable only on property used in a trade or business or property held for the production of income. Section 23 (1), Internal Revenue Code. Since the evidence does not show what portion, if any, of this equipment the petitioner had possession or ownership of in 1938, no depreciation thereon is allowable in that year. See Edith Henry Barbour, 44 B.T.A. 1117, reversed on other grounds, 136 Fed. (2d) 486. Decision will be entered under Rule 50.