WILLIAM C. FERREIRA AND ALICE C. FERREIRA, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6318–70.   Filed March 27, 1972.

William C. Ferreira, pro se.
*John Gigounas*, for the respondent.

HOYT, *Judge:* The respondent determined a deficiency in the petitioners' income tax for the calendar year 1967 in the amount of $6,362.45.

The issue presented for our decision is whether $26,000 received by the petitioners in 1967 as part of a condemnation award is taxable as ordinary income in that year.

### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly. The stipulated facts and exhibits are incorporated herein by this reference.

At the time the petition herein was filed, the petitioners, William C. and Alice C. Ferreira, resided at 2054 Leiloke Drive, Honolulu, Hawaii. They filed their joint Federal income tax return for the taxable year 1967 with the district director of internal revenue, Honolulu, Hawaii.

The petitioners owned a certain piece of property known as Beretania Theater in Honolulu, Hawaii. On March 30, 1961, a summons and complaint was filed by the Honolulu Redevelopment Agency (H.R.A.), condemning this property.

The H.R.A. appraised the condemned property at $47,300 and deposited this amount with the Circuit Court of the First Circuit of the State of Hawaii. The petitioners contested this appraisal on the grounds that it reflected the second best use of the property. Subsequently, the H.R.A. withdrew the $47,300 pursuant to a court order and proceeded to make a new appraisal of the property.

The matter ultimately came to be tried in the Circuit Court before a jury. On November 6, 1966, the jury made a condemnation award to the petitioners in the amount of $100,000. The court subsequently entered an order of remittitur in the amount of $15,000 reducing the verdict to $85,000, which amount the petitioners finally accepted.

After several additional motions and orders, the court entered a final judgment in favor of the petitioners on April 5, 1967. During the years between commencement of the condemnation action and the final judgment, petitioners remained in possession of the property. The petitioners were awarded $111,000, which amount included $26,000 as "interest by way of damages from the date of summons to the date of entry of judgment, *less offset for the reasonable value of the use and possession by the owners during said period*." (Emphasis added.) The petitioners received the entire $111,000 in 1967.[1]

The petitioners did not include the $26,000 in their income in the taxable year 1967.

In his statutory notice to the petitioners, relating to their taxable year 1967, the Commissioner "determined that the amount of $26,000 * * * received as 'interest by way of damages' in a condemnation award from the Honolulu Redevelopment Agency is taxable * * * as ordinary income." [2]

OPINION

The respondent contends that the $26,000 paid to the petitioners in 1967 constituted either "interest for delay in payment" or "an amount in lieu of what petitioners might have earned during the interval between the date of the summons and the entry of the final judgment." The respondent therefore concludes that the $26,000 is taxable as ordinary income under section 61(a).[3] Alternatively, respondent urges that even if the $26,000 is not ordinary income, it would increase petitioners' gain on the sale in 1967.

The petitioners argue that the $26,000 is nontaxable because it is an award for "blight of summons damages" or "blight damages" under Hawaii law.[4] They point out that, because they remained in possession of the property until the final award was made, they were not legally entitled to interest under the Hawaii cases. They urged that the $26,000 was "non-taxable" as damages for injury under the fifth amendment or a payment for personal injuries sustained by the petitioners, falling within the scope of section 104.[5] They further do not

---

[1] The cost of the property in question was $14,000, and $23,473.01 was expended in connection with litigation expenses with respect to the condemnation proceedings. The computation of the capital gain allowing these items is not in dispute.

[2] Other adjustments were made in the statutory notice for the year 1967. The petitioners have conceded the correctness of these adjustments. Only the proper tax treatment of the $26,000 amount remains at issue.

[3] Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended.

[4] Obviously, mere labels employed under State law are not determinative of Federal tax consequences.

[5] Sec. 104 provides that, with some exceptions, "gross income does not include * * * the amount of any damages received (whether by suit or agreement) on account of personal injuries or sickness." Sec. 1.104–1(c), Income Tax Regs., indicates clearly that the damages must be those based upon "tort or tort type rights."

agree with the respondent's alternative argument that the amount in question was a part of the "sale price," taxable to the petitioners at capital gain rates, but contend it was a nontaxable award of "damages for injury."

Section 61(a) of the 1954 Code provides that "gross income means all income from whatever source derived * * *." We do not see, nor have we been shown by petitioners, how the $26,000 received by them is nontaxable because it constitutes "damages received * * * on account of personal injuries or sickness" under section 104. There is nothing in the record indicating that the petitioners were personally injured in any way or that the local court was compensating them for personal-injury, tort-type rights. We hold that the $26,000 is taxable income to the petitioners and that the question in this case comes down to whether it is taxable as ordinary income or at capital gain rates because it is part of the "sale price" for the condemned property.

It is settled law that amounts received in connection with a condemnation award, above and in addition to the sale price, are taxable as ordinary income to the recipient. *Kieselbach* v. *Commissioner*, 317 U.S. 399 (1943); *Isaac G. Johnson & Co.* v. *United States*, 149 F. 2d 851 (C.A. 2, 1945); *320 E. 47th Street Corporation*, 26 T.C. 545 (1956), reversed on another issue 243 F. 2d 894 (C.A. 2, 1957).

In Kieselbach, the Supreme Court stated (pp. 403–404):

We agree with the Court of Appeals. The sum paid these taxpayers above the award of $58,000 was paid because of the failure to put the award in the taxpayers' hands on the day * * * when the property was taken. This additional payment was necessary to give the owner the full equivalent of the value of the property at the time it was taken. Whether one calls it interest on the value or payments to meet the constitutional requirement of just compensation is immaterial. It is income under § 22 [of the Revenue Act of 1936, a predecessor to sec. 61 of the 1954 Code], paid to the taxpayers in lieu of what they might have earned on the sum found to be the value of the property on the day the property was taken. It is not a capital gain upon an asset sold under § 117. The sale price was the $53,000.[3]

\* \* \* \* \* \* \*

these payments are indemnification for delay, not a part of the sale price. While without their payment just compensation would not be received by the vendor, it does not follow that the additional payments are a part of the sale price under § 117(a). The just compensation constitutionally required is not the same thing as the sale price of a capital asset.[5]

[Footnotes omitted.]

Initially, we observe that the sale price here was the $85,000 fixed by the jury award as subsequently reduced by the trial court's remittitur; the record is not clear as to exactly what purpose the $26,000

payment was intended to serve or exactly how it was calculated.[6] This deficiency in the record must weigh against the petitioners, since they have the burden of proof. *Welch* v. *Helvering*, 290 U.S. 111 (1933); Rule 32, Tax Court Rules of Practice.

Even if we conclude that the $26,000 payment constituted "blight damages," as the petitioners contend, our examination of the pertinent authorities leads us to conclude that the payment should be taxed at ordinary rates for Federal income tax purposes under the rationale of *Kieselbach* v. *Commissioner, supra*.

The Hawaii courts draw a distinction between "blight damages" and "interest." In *Territory* v. *Honolulu Plantation*, 34 Haw. 859, it was indicated that these damages, "commonly called interest" are awarded because from the time of the institution of the suit the owner can claim nothing for added improvements or an advance in the value of the property. But see *Weiser Valley Land & Water Co.*, v. *Ryan*, 190 Fed. 417 (C.A. 9, 1911).

However, in a subsequent case, *State* v. *Coney*, 45 Haw. 650, 372 P. 2d 348 (1962), the Hawaii Supreme Court cited the *Honolulu Plantation* case and then stated (372 P. 2d at 353):

> The defendants, in the case at bar, are entitled to just compensation at the time of taking, which is the date of issuance of summons here in Hawaii, and in addition thereto are entitled to interest at a reasonable or proper rate on such award until paid. It is the view of this court that under the circumstances they are not entitled to any advance that might affect the value of the property subsequent to the date of taking, and the trial court committed no error in refusing the defendants' offer of proof that the property appreciated in value between the date of issuance of summons and the date of deposit.

It is clear from the *Coney* case that "blight damages" do not reflect any increase in the value of the condemned property and that the Hawaii courts will not even hear evidence concerning appreciation. A "blight damages" payment will apparently be made even if the condemned property depreciates in value between the date of the summons and the date of the award. Like an interest payment, it is calculated at the normal commercial or statutory rate for interest, as applied to the value of the property at the date of the taking. In the *Coney* case, the court stated (372 P. 2d at 353):

> On the question of the so-called interest payable from the date of taking or date of issuance of summons until full payment is made for the property condemned, this court has consistently held that what is commonly called interest is in fact an additional award for blight of summons damages caused to the owner, and that, as stated in United States v. Rogers, 255 U.S. 163 at 169, 41 S. Ct. 281,

---

[6] On Nov. 7, 1966, Judge Bernard H. Levinson, who heard the condemnation case, requested that the parties submit memoranda on how "blight damages" should be calculated. However, the Circuit Court's final judgment, issued on Apr. 5, 1967, does not refer to the $26,000 as "blight damages."

at 282, 65 L. Ed. 566 "* * * the allowance of just compensation by giving interest *from the time of taking until payment* is a convenient and fair method of ascertaining the sum to which the owner of the land is entitled." [Emphasis added.] Territory v. Honolulu Plantation, supra, 34 Haw. 859, 872–874.

The cases are in general agreement that the owner of property condemned is entitled to an additional award for blight of summons damage for delay in the payment of compensation for the property taken, which begins to run from the date of taking and is usually to be measured by an interest which must be proper or reasonable. Ordinarily, the interest is at the normal commercial rate during the period of delay, but in the absence of evidence of such commercial rate, the presumption is that the legal or statutory rate is to be applied [Citations omitted.]

It is significant that, in the excerpt quoted above, the Hawaii Supreme Court has stated that "the owner of property condemned is entitled to an additional award for blight of summons damage *for delay in the payment of compensation for the property taken*." (Emphasis added.) This language closely approximates the language employed in the *Kieselbach* opinion, wherein it was stated that the sum at issue in that case "was paid because of the failure to put the award in the taxpayers' hands on the day * * * when the property was taken." We think it also significant that here the additional award was "offset by the reasonable value of the use and possession by the owners during said period." This indicates the compensatory nature of the payment and that it was not part of the "sale price."

In a subsequent case the Supreme Court of Hawaii indicated clearly what the nature of "blight of summons" damages are in that State. *In Re Campbell's Estate*, 46 Haw. 475, 382 P. 2d 920 (1963). In affirming the trial court's holding that such damages are income items, properly credited to income in settling a trustee's accounts, the lower court's determination that they were in effect an interest charge upon the amount recovered in a condemnation action was upheld. In the court's syllabus the following headnote appears as to this issue (382 P. 2d at 931) :

Blight of summons damages, paid because the property condemned is presumed to be taken as of the date of summons but payment is not made on that date, to compensate for which the condemning authority pays interest so as to put the property owner in the same position as if payment had been made contemporaneously with the summons, are a proper credit to trust income.

In the opinion the court said (382 P. 2d at 969) :

Blight of summons damages are paid because the property "is presumed to be taken as of the date of summons and its value is calculated as of that date." Since payment is not made on that date, in order to compensate therefor the condemning authority must pay interest, subject to a setoff for rents received, so as to put the property owner in the same position as if payment had been made contemporaneously with the summons. * * * We agree with the trial court's holding that such blight of summons damages are a proper credit to income and affirm the ruling.

872

We conclude, therefore, for the reasons given in *Kieselbach* v. *Commissioner*, *supra*, that the $26,000 payment involved in the instant case was made to compensate petitioners for the delay between the taking of their property and the final compensating award made 6 years later; it was not a part of the "sale price" of the condemned property and the said amount is taxable to the petitioners in 1967 as ordinary income under section 61(a).

Our conclusion is not negated by the fact that the $26,000 was paid to the petitioners with reference to a period in which they retained possession of the property. In a condemnation action, the date of the issuance of the summons is regarded as the date of the taking in Hawaii. *In Re Campbell's Estate*, *supra*; *State* v. *Coney*, *supra*. The payment of $26,000 was computed as "interest" on the award from the date of summons to the date of entry of judgment, less offset for the reasonable value of petitioners' possession during that period. Petitioners' possession was therefore considered in fixing the amount of the award of "interest" or "blight of summons" damages. By whatever name the $26,000 payment is called, it is still taxable income under *Kieselbach* v. *Commissioner*, *supra*,[7] which dictates that result whether possession is surrendered by a taxpayer, or not. *Commissioner* v. *Barbour*, 136 F. 2d 486 (C.A. 6, 1943), reversing 44 B.T.A. 1117 (1941), certiorari denied 320 U.S. 778.[8] Cf. *Winter Realty & Construction Co.*, 2 T.C. 38, 55 (1943), reversed on another issue 149 F. 2d 567 (C.A. 2, 1945), certiorari denied 326 U.S. 754.

*Decision will be entered for the respondent.*

---

[7] Under *Kieselbach* we need not conclude that the payment is "interest" as such. If the $26,000 award was made because of the delay in compensating the petitioners for the taking of their property, it constitutes taxable income.

[8] Our opinion in *Edith Henry Barbour*, 44 B.T.A. 1117 (1941), was written only a few months after our opinion in *Henry A. Kieselbach*, 44 B.T.A. 279 (1941). In *Barbour*, we relied on our *Kieselbach* opinion. Subsequently, *Kieselbach* was reversed by the Circuit Court of Appeals, *Commissioner* v. *Kieselbach*, 127 F. 2d 359 (C.C.A. 3, 1942). The reversal was upheld by the Supreme Court. *Kieselbach* v. *Commissioner*, 317 U.S. 399 (1943). Thereafter, in reversing us in *Barbour*, the Sixth Circuit relied on the Supreme Court's opinion in *Kieselbach*. These cases demonstrate that retained possession is not a distinction that dictates a different result.