## PIERCE v. CONNECTICUT GENERAL LIFE INS. CO.

### No. 6900.

Circuit Court of Appeals, Third Circuit.

Oct. 4, 1939.

Harold D. Saylor and William C. Ferguson, Jr., both of Philadelphia, Pa., for appellant.

B. M. Anderson, of Hartford, Conn., J. S. Conwell, of Philadelphia, Pa., and Wm. Marshall Bullitt, of Louisville, Ky., for appellee.

Before MARIS, CLARK, and BIDDLE, Circuit Judges.

CLARK, Circuit Judge.

We may say that plaintiff-appellant's approach to the case at bar strikes us as being courageous rather than cogent. He lost his jury trial in the court below at which all his points for charge on the law were affirmed, and those of defendant-appellee denied. He is forced, therefore, to address this court as though it were a jury, which it is not, with an amplified repetition of the factual argument which failed before an actual jury. The object of that argument is to bring his cause within the legal proposition that the discretionary refusal of a trial court to grant a new trial for verdict allegedly contrary to the weight of the evidence may be reversed if an abuse of that discretion is shown. Yet in support of this undoubtedly sound precept plaintiff-appellant is able to cite but three Pennsylvania lower court decisions, the circumstances of which bear little or no resemblance to those at bar.

In our particular circumstance, we find nothing to criticize in the action of the jury below. They were informed that plaintiff-appellant had since 1914 acted as General Agent for the defendant-appellee insurance company pursuant to the terms of a written contract. The contract provided for termination on thirty days notice at the option of either party. It was so terminated by defendant-appellee in 1934. This step, however, was claimed by plaintiff-appellant to constitute a breach of a subsequent modification of the termination clause. His whole case depended, then, upon proof of such a modification. To do so he advanced four "agreements". Two of these were in the form of letters showing on their face nothing more than an expectation that the agency was to continue for some time to come. The other two were in the form of oral contracts with the insurance company whereby it engaged to employ plaintiff-appellant as its General Agent "permanently". Their proof rested solely on the latter's oral testimony as to private conversations with responsible officers of the company.

It may be that the jury did not regard this testimony as being entitled per se to full weight. If so, they would have but heeded the warnings of an eminent writer

set forth under the self-explanatory title, "Proclivities of Biased Witness". 2 Moore, Treatise on Facts, sec. 1096.[1] Then again the twelve gentlemen in question may have been moved by the circumstances adduced by defendant-appellee tending to rebut the existence of the oral "agreements". One of these bargains was substantially denied by deposition. The other, though not contradicted by direct testimony, proceeded upon the somewhat unlikely consideration of plaintiff-appellant's forbearance from joining another company on the chance of earning (at the outset) less than two-thirds of what he was already receiving. Neither was ever reduced to writing, or mentioned in the voluminous correspondence between the parties. Furthermore, many changes (some only trivial) in the parties' understanding had been embodied in formal written amendments to their basic contract of 1914. The shift from a reciprocal to an unilateral or quasi-unilateral right of termination was, of course, far from trivial. See 4 Williston on Contracts, Rev.Ed., 1027A. Nevertheless, the original termination clause stood unaltered despite the fact that no less than seven written amendments were executed after that shift was allegedly made. Compare, Phila. Tr., etc., Co. v. Phila., etc., R. Co., 177 Pa. 38, 49, 35 A. 688.

With these factors in the case, it is plain to us that the jury could, and did, balance the evidence against the plaintiff-appellant without weighting the scales with any "capricious disbelief". See Von Moschzisker, Trial by Jury, Sec. 311. A fortiori, the learned trial judge did not abuse his discretion in leaving that balance undisturbed, Henes v. McGovern, 317 Pa. 302, 176 A. 503; Tingle v. Curtis-Martin Newspapers, 318 Pa. 537, 179 A. 80. Moreover, his refusal to exercise his discretion

shows that he was "satisfied that justice had been done", Evans v. Penn Mutual Life Insurance Co., 322 Pa. 547, 559, 186 A. 133; 20 R.C.L. p. 273, and we are similarly satisfied. Plaintiff-appellant protests that the company having watched him spend years of his life and huge sums of his money to establish a highly successful agency, greedily snatched it away from him on a forgotten technicality in order to reap what he had sown. To this, however, there are two complete answers.

First, it was pleaded and proved that plaintiff-appellant's contract was terminated not arbitrarily but for good and sufficient objective cause. Second, it was likewise shown that plaintiff-appellant (apparently in accordance with usage) devoted a considerable portion of his commissions to the payment of maintenance, development, etc., expenses for the agency. During the twenty-one year period that he was under contract he received $865,677.97 gross commissions, ploughed back $392,298.33, and so made $473,379.64 net. There can be little doubt that he would have made less if he had ploughed back nothing. He may be said, therefore, to have been "investing" not in the agency itself, but in his own income from the agency. Hence cancellation of his contract deprived him of no inchoate property right in the enterprise which arose by virtue of his investment. Nor was the cancellation harsh in other respects. It left him free to employ his talents elsewhere. It also left him an aggregate of $57,673.33 in renewal commissions during the four years prior to the trial—commissions which will be payable, though in steadily diminishing amounts, until 1943.

The judgment of the District Court is affirmed.

---

[1] Other appropriate headings in that work are:

Sec. 825 Interested Forgetfulness of Biased Witness

Sec. 884 Biased Witness' Memory of Oral Statements

Sec 1095 Imputation of Bias No Reflection on Integrity

Sec. 1148 Test of Oral Declarations and Admissions in General

Sec. 1165 Prepossession and Bias of Witness to Oral Statements

Sec. 1168 Oral Promises in Relation to the Statute of Frauds