## KIESELBACH et ux. *v.* COMMISSIONER OF INTERNAL REVENUE.

No. 184. Argued December 11, 1942.—Decided January 4, 1943.

---

[4] 41 Stat. 988, §§ 1, 5, 6, 7, 12, 19

*Mr. Harry Friedman* for petitioners.

*Mr. Arnold Raum,* with whom *Solicitor General Fahy, Assistant Attorney General Clark,* and *Messrs. Sewall Key, J. Louis Monarch,* and *Arthur A. Armstrong* were on the brief, for respondent.

*Mr. John Jay McKelvey* filed a brief on behalf of Isaac G. Johnson & Co., as *amicus curiae,* in support of petitioners.

MR. JUSTICE REED delivered the opinion of the Court.

This writ of certiorari was granted limited to a single narrow point in the law of income taxes. The sum in question was received as part of the compensation in a condemnation proceeding instituted by the City of New York. Payment was made several years after the actual taking. The issue concerns the nature of that portion of the payment which is called "interest" by the Greater New York Charter and which the owner must receive, in addition to the value of the property fixed as of the time of the taking, to produce, when actually paid, the full equivalent of that value. Was this portion a capital gain or ordinary income?

The writ was granted because of conflict upon the point between this case below, *Commissioner* v. *Kieselbach,* 127 F. 2d 359 (C. C. A. 3), and *Seaside Improvement Co.* v. *Commissioner,* 105 F. 2d 990 (C. C. A. 2).

The taxpayers owned a piece of realty in the City of New York. In December, 1932, that city's Board of Estimate passed a resolution which directed that upon January 3, 1933, the title in fee to a large part of the parcel would vest in the city. The condemnation proceeding, of which the resolution was a part, was pursuant to § 976

of the Greater New York Charter, which provides in part as follows:

"Upon the date of the entry of the order granting the application to condemn, or of the filing of the damage map in the proceeding, as the case may be, or upon such subsequent date as may be specified by resolution of said board, the city of New York shall become and be seized in fee of or of the easement, in, over, upon or under, the said real property described in the said order or damage map, as the board of estimate and apportionment may determine, the same to be held, appropriated, converted and used to and for such purpose accordingly. Interest at the legal rate upon the sum or sums to which the owners are justly entitled upon the date of the vesting of title in the city of New York, as aforesaid, from said date to the date of the final decree shall be awarded by the court as part of the compensation to which such owners are entitled."

The city took possession on the date named in the resolution and received all rents thereafter accruing. The Supreme Court of New York entered its final decree in the proceedings on March 31, 1937. It was for $73,246.57 and was stated to be the just compensation which the owners were entitled to receive. Payment was made on May 12, 1937. It has been stipulated that:

"The amount of said payment was computed by adding to the principal amount of $58,000.00, interest thereon as provided by Section 976 of the Greater New York Charter, in the sum of $15,246.57, computed at the rate of 6% per annum from January 3, 1933 to May 12, 1937, or a total of $73,246.57." [1]

---

[1] No question is raised involving the accuracy of this computation. While § 976 requires interest only to the date of the decree, § 981, Greater New York Charter, as amended by Laws of 1932, c. 391, requires interest on the decree. *Matter of City of New York (Chrystie St.)*. 264 N. Y. 319, 190 N. E. 654.

We accept as a fact that the $58,000, principal amount just referred to, was, as petitioners allege, an award to them. We assume it was the value on January 3, 1933, of this property then taken by the city.

Section 22 of the Revenue Act of 1936, c. 690, 49 Stat. 1648, 1657, contains the general definition of gross income. It reads as follows:

"(a) *General Definition.*—'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. . . ."

The taxpayers' basis on the condemned property was around $42,000. In their original return the difference between the basis and the total sum received was treated as capital gain and only a percentage was returned as income pursuant to § 117.[2] The Commissioner assessed a deficiency on the portion of the award computed as interest, on the ground that such portion was ordinary income.

---

[2] Section 117 reads as follows:

"(a) *General Rule.*—In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net income:

. . . . .

"40 per centum if the capital asset has been held for more than 5 years but not for more than 10 years;

"30 per centum if the capital asset has been held for more than 10 years.

"(b) *Definition of Capital Assets.*—For the purposes of this title, 'capital assets' means property held by the taxpayer (whether or not connected with his trade or business), . . ." 49 Stat. 1691.

The Board of Tax Appeals reversed the Commissioner and the Circuit Court of Appeals, in turn, held with the Commissioner. 127 F. 2d 359.

We agree with the Court of Appeals. The sum paid these taxpayers above the award of $58,000 was paid because of the failure to put the award in the taxpayers' hands on the day, January 3, 1933, when the property was taken. This additional payment was necessary to give the owner the full equivalent of the value of the property at the time it was taken. Whether one calls it interest on the value or payments to meet the constitutional requirement of just compensation is immaterial. It is income under § 22, paid to the taxpayers in lieu of what they might have earned on the sum found to be the value of the property on the day the property was taken. It is not a capital gain upon an asset sold under § 117. The sale price was the $58,000.[3]

The property was turned over in January, 1933, by the resolution. This was the sale. Title then passed. The subsequent earnings of the property went to the city. The transaction was as though a purchase money lien at legal interest was retained upon the property. Such interest when paid would, of course, be ordinary income.

From the premises that the value at time of the taking plus compensation for delay in payment equals just compensation, *United States* v. *Klamath Indians,* 304 U. S. 119, 123,[4] and that a good measure of the necessary additional amount is interest "at a proper rate," *Seaboard Air*

[3] The involuntary character of the transaction is not significant. *Helvering* v. *Hammel,* 311 U. S. 504, 510.

No review is sought of the holding that transfer of property through condemnation proceedings is a sale within the meaning of § 117 of the Revenue Act of 1936. *Commissioner* v. *Kieselbach,* 127 F. 2d 359, 360.

[4] See also *Shoshone Tribe* v. *United States,* 299 U. S. 476, 496; *Phelps* v. *United States,* 274 U. S. 341; *Brooks-Scanlon Corp.* v. *United States,* 265 U. S. 106; *Liggett & Myers Co.* v. *United States,* 274 U. S. 215.

*Line Ry. Co.* v. *United States,* 261 U. S. 299, 306, petitioner contends that as just compensation requires the payment of these sums for delay in settlement, they are a part of the damages awarded for the property. But these payments are indemnification for delay, not a part of the sale price. While without their payment just compensation would not be received by the vendor, it does not follow that the additional payments are a part of the sale price under § 117 (a). The just compensation constitutionally required is not the same thing as the sale price of a capital asset.[5]

In *Seaside Improvement Co.* v. *Commissioner,* 105 F. 2d 990, 994, an opposite conclusion apparently was reached by treating the additional payments as part of the purchase price as well as part of "just compensation." [6]

Petitioners urge that the additional sum paid should be construed as a part of the sale price, in analogy to decisions that such sums, when paid in condemnation proceedings by a state, are not interest entitled to exemption under § 22 (b) (4), Internal Revenue Code, as "interest upon the obligations of a state." [7] The cases cited construe the quoted phrase as designed to protect

---

[5] The same principle is applicable to the New York decisions, holding that interest is a part of the condemnation award. Just compensation requires satisfaction for the delay by payment of the additional sums. *Matter of City of New York (West 151st St.),* 222 N. Y. 370, 372, 118 N. E. 807; *Matter of Minzesheimer,* 144 App. Div. 576, 579, 129 N. Y. S. 779, affirmed 204 N. Y. 272, 97 N. E. 717; *Matter of City of N. Y. (Bronx River Parkway),* 284 N. Y. 48, 54, 29 N. E. 2d 465. The obligation to pay its value arises when the property is taken. Title then passes. *Kahlen* v. *State of New York,* 223 N. Y. 383, 389, 119 N. E. 883. *Woodward-Brown Realty Co.* v. *City of New York,* 235 N. Y. 278, 139 N. E. 267, is not to the contrary. It deals with the unity of a right of action on an award with interest, holding only one proceeding is authorized against the condemnor.

[6] "Such additional sums are not considered normal interest but part of the compensation awarded for the property taken." 105 F. 2d at 994.

[7] *Holley* v. *United States,* 124 F. 2d 909 (C. C. A. 6, 1942); *Posselius* v. *United States,* 90 Ct. Cls. 519, 31 F. Supp. 161 (1940); *Williams*

the states' borrowing power. In any event, the question here is not whether these sums are interest. They may not be interest and yet be other than part of the sale price.[8] If not interest, they may be compensation for the delay in payment.

Other contentions are made by the petitioners. It is said that in other situations interest on delayed payments has been treated as part of the principal received and not as normal income.[9] By analogy it is urged that the same principle be applied here. The first three cases in the preceding note involved payments of awards in liquidation of claims against Germany allowed by the Mixed Claims Commission. See Settlement of War Claims Act of 1928, 45 Stat. 254. As the aggregate payments did not equal the taxpayers' basis, the decisions refused to consider as income the portions designated as interest on the ground that in liquidation the investment first must be restored before income is realized. *Koninklijke Hollandische Lloyd* v. *Commissioner* and *Consorzio Veneziano etc.* v. *Commissioner* applied the rule that payment for deferred compensation was not interest under § 119 (a)[10]

---

*Land Co.* v. *United States*, 90 Ct. Cls. 499, 31 F. Supp. 154 (1940); *Baltimore & Ohio R. Co.* v. *Commissioner*, 78 F. 2d 460 (C. C. A. 4, 1935); *U. S. Trust Co. of New York* v. *Anderson*, 65 F. 2d 575 (C. C. A. 2, 1933).

[8] "Nor is it quite accurate to say that interest as such is added to value at the time of the taking in order to arrive at just compensation subsequently ascertained and paid." *United States* v. *Klamath Indians*, 304 U. S. 119, 123.

[9] *Helvering* v. *Drier*, 79 F. 2d 501 (C. C. A. 4, 1935); *Commissioner* v. *Speyer*, 77 F. 2d 824 (C. C. A. 2, 1935); *Drier* v. *Helvering*, 63 App. D. C. 283, 72 F. 2d 76 (1934); Consorzio Veneziano di Armamento e Navigazione *v.* Commissioner, 21 B. T. A. 984 (1930); N. V. Koninklijke Hollandische Lloyd (Royal Holland Lloyd) *v.* Commissioner, 34 B. T. A. 830 (1936).

[10] This section specifies interest on interest bearing obligations of residents as one of the items of income from sources within the United States.

of the Revenue Act of 1932 or 1928. These decisions obviously are not in point on the question whether the additional payments in the present case are part of the sale price or other income under § 22. Nor do we find persuasive the cases refusing to allow an installment purchaser an interest deduction because of his deferred payments where the purpose was an arrangement for the payment of the purchase price.[11] In the present case, the purchase price was settled as of January 3, 1933, when the property was taken over.

*Affirmed.*

---

[11] *Hundahl* v. *Commissioner,* 118 F. 2d 349 (C. C. A. 5th, 1941); *Henrietta Mills* v. *Commissioner,* 52 F. 2d 931 (C. C. A. 4th, 1931); *Pratt-Mallory Co.* v. *United States,* 82 Ct. Cls. 292, 12 F. Supp. 1020 (1936); *Daniel Brothers Co.* v. *Commissioner,* 28 F. 2d 761 (C. C. A. 5th, 1928).