## NITTERHOUSE v. UNITED STATES.

### Civ. A. No. 11372.

United States District Court
E. D. Pennsylvania.

Feb. 6, 1953.

Henry D. O'Connor, Philadelphia, Pa., for plaintiff.

Gerald A. Gleeson, U. S. Atty., Philadelphia, Pa., for defendant.

GANEY, District Judge.

The action here involved was brought on September 13, 1950 to recover $3,617.93 alleged to have been erroneously paid by the taxpayer as income tax for the year 1946. The issue posed is in which year should the taxpayer report income, representing a long-term capital gain, derived from the condemnation of his land by the Federal gov-

ernment. The taxpayer insists it should be in 1943, the year in which the condemnation proceedings were brought. The Commissioner of Internal Revenue claims it should be the year in which the taxpayer actually received the money for the land. The facts of the case are not in dispute.

On May 12, 1943, taxpayer purchased 21.476 acres of land in Franklin County, Pa., for $2,147.60. More than six months later, on December 2, 1943, the United States instituted an action to condemn the land by filing a petition for condemnation in the United States District Court for the Middle District of Pennsylvania.[1] On April 4, 1944, the United States deposited the sum of $5,370 in the registry of the court on account of the just compensation to be awarded to the taxpayer in the proceedings. On May 22, 1945, a jury determined that the just compensation for the taking of the land was $18,825. Judgment for that amount plus interest in accordance with the requirements of the Declaration of Taking Act, 40 U.S.C.A. § 258a, was entered in favor of the taxpayer on March 14, 1946. On August 26, 1946, taxpayer received a check for $20,596.84 in payment. This sum consisted of $18,825 for the value of the land, and $1,771.84 for interest on $5,370 from December 2, 1943 to April 4, 1944, and on the balance of $13,455 from December 2, 1943 to the date of the issuance of the check.[2] In the same year taxpayer paid $2,700 representing counsel fees and costs attributable to the condemnation proceedings.

Prior to receiving payment, the taxpayer did not file an application for the recovery of the deposit of $5,370. Nor did he include any sum attributable to the deposit money or any part of the award in his income tax returns for the calendar years of 1943 through 1946, but on or about the due date of the latter return he filed with the Commissioner of Internal Revenue a request to establish a replacement fund, permitted by §

112(f) of the Internal Revenue Code, 26 U.S.C. During the years involved, taxpayer's income tax returns were filed on the cash basis.

On November 12, 1948, he withdrew his request for the establishment of the replacement fund. As a consequence, the Commissioner recomputed taxpayer's return for the year 1946. He included in that return the total gain in excess of the adjusted basis resulting from the condemnation proceedings, and then computed taxpayer's income tax on the basis of the rates in effect for the year 1946. The deficiency was assessed on June 16, 1949 and paid by the taxpayer a month later. Taxpayer's claim for refund, filed March 2, 1950, has not been acted upon by the Commissioner.

Both sides agree, as they must, that the condemnation was a sale within the meaning of § 117 of the Internal Revenue Code, and that the sale occurred when the taxpayer ceased to own the land. C.I.R. v. Kieselbach, 3 Cir., 1943, 127 F.2d 359, affirmed 317 U.S. 399, 63 S.Ct. 303, 87 L.Ed. 358. In the stipulation of facts, the Government not desiring to raise an issue on this point, is willing to agree with the taxpayer that title to the land passed to the United States on December 2, 1943. However, the docket entries in the condemnation proceedings show that the decree of taking was not filed until April 4, 1944, the date on which the United States deposited the $5,370. It is fairly well settled that the United States cannot, without the consent of the landowner, obtain title to land condemned pursuant to the Declaration of Taking Act, supra, until a deposit of the estimated compensation is made. United States v. 150.29 Acres of Land, 7 Cir., 1943, 135 F.2d 878; United States v. Certain Lands in Borough of Brooklyn, D.C.E.D. N.Y.1941, 39 F.Supp. 91; United States v. Certain Parcels of Land in Prince George's County, D.C.Md.1941, 40 F.Supp. 436; United States v. 3.08 Acres of Land, D.C.

1. United States v. 21,476 Acres of Land, etc., Civil Action No. 1,278. No opinion for publication.

2. A mistake in the calculation of interest on the judgment of March 26, 1946 was later corrected, and on June 23, 1950 the United States deposited the sum of $541.86 representing the deficiency in interest payment on $13,455.

S.D.N.Y.1942, 46 F.Supp. 64. Hence, the earliest year the taxpayer may insist upon as the one in which he should report his gain from the condemnation proceedings is 1944.

The facts in the Kieselbach case, supra, were these: In 1930 the City of New York began condemnation proceedings in the state court to obtain title to the Kieselbachs' property. By resolution of a Board of Estimate made pursuant to the Greater New York Charter, title of the property vested in the city on January 3, 1933. On March 31, 1937 a judgment with legal interest was entered on a jury's verdict of just compensation which the Kieselbachs received on May 12, 1937. Our Circuit Court, after it ascertained the length of time the property was held by the Kieselbachs, referred only to the Internal Revenue Act effective for the calendar year in which they received the payment to determine the percentage of gain to be recognized in computing their net income. For this reason it seems to us that one of the holdings of that case is that in determining how gains realized from condemnation proceedings are to be taxed, a taxpayer should apply the income tax law in effect at the time the taxpayer, on a cash basis, received payment for his property. Unquestionably this was one of the holdings in Patrick McGuirl, Inc., v. C. I. R., 2 Cir., 1935, 74 F.2d 729; Winter Realty & Construction Co. v. C. I. R., 2 Cir., 1945, 149 F.2d 567 [3] and Keneipp v. United States, 1950, 87 U.S. App.D.C. 242, 184 F.2d 263.

On appeal of the Kieselbach case to the Supreme Court of the United States, the only question raised, unfortunately, was whether the "amount designated as interest in the condemnation award was part of the price * * * or was 'true' interest, taxable as ordinary income." The Supreme Court, in affirming the Circuit Court's holding on that issue, made statements in its opinion, 317 U.S. 399, 63 S.Ct. 303, which

gives the taxpayer before us some hope of ultimately recovering in this action. These statements are as follows:

On page 403 of 317 U.S., on page 305 of 63 S.Ct.: "The property was turned over in January, 1933, by the resolution. This was the sale. Title then passed. * * * The transaction was as though a purchase money lien at legal interest was retained upon the property." And on page 406 of 317 U.S., on page 307 of 63 S.Ct.: "In the present case, the purchase price was settled as of January 3, 1933, when the property was taken over."

We have been told that when a taxpayer sells his property (capital asset) and receives as the purchase price or as a part thereof a purchase-money mortgage from the buyer, gain to the taxpayer as a result of the sale is to be earmarked as net income in the taxpayer's income tax return for the calendar year in which the sale was made, and the market value of the purchase money mortgage is to be considered as part of the sales price in determining the amount of gain. Shubin v. C. I. R., 3 Cir., 1933, 67 F.2d 199; Piper v. C. I. R., 5 Cir., 1936, 84 F.2d 560. Had the taxpayer in the case before us sold the property in question on April 4, 1944 for $18,825 and accepted as consideration a down payment of $5,370 and a purchase-money mortgage for the balance of $13,455 payable in 1946 at interest of 6% per annum, the Commissioner would concede that the sale and gain to the taxpayer occurred on April 4, 1944.

If we were to assume that the comparison or anology used by the Supreme Court in the Kieselbach case were to hold for the transaction here, we would be required to determine whether the "purchase money mortgage" (possible future claim against the United States) has a fair market value, and if so, what that value was as of April 4, 1944, the date title to the 21.476 acres of land vested in the United States. If we were to conclude that it had a fair

3. This problem did not arise in the case of C. I. R. v. Barbour, 6 Cir., 1943, 136 F.2d 486, certiorari denied 320 U.S. 778, 64 S.Ct. 92, 88 L.Ed. 467, because the passing of title to the condemned land, and the payment of just compensation occurred in the same year.

market value as of that date[4], we would attain a result contrary to that reached in the Kieselbach opinion by our Court of Appeals, and the Patrick McGuirl, Inc., Winter Realty & Construction Co., and Keneipp cases, supra. Also see Burnet v. Logan, 1931, 283 U.S. 404, 412–413, 51 S.Ct. 550, 75 L.Ed. 1143. Consequently, we must rule that the taxpayer received no money and no property having a fair market value prior to 1946, and the gain to him from the condemnation proceedings occurred in 1946, the year in which he received payment.

In the alternative, the taxpayer argues that the $5,370 deposited in the registry of the court in 1944 was constructively received by him in that year and therefore, he should be taxed as though he received that sum in 1944 since it was in excess of the adjusted basis for the condemned land. In other words, he claims that regardless of whether or not he was entitled to the entire amount of the deposit, he would have included the gain resulting therefrom in his income tax return for the calendar year 1944 if he had withdrawn the deposit in that year. The Government meets this argument on two grounds. First, it says, the deposit was in no sense a measure of the amount the taxpayer was to receive, citing United States v. Miller, 1943, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336, and therefore it was too uncertain in 1944 whether there would be any gain. Second, the deposit was not constructively received, because it does not appear of record that the taxpayer could have withdrawn it in whole or in part prior to his receiving payment in 1946.

■ We think the answer to taxpayer's argument is a simple one. We agree that if he had withdrawn the deposit in any one of the two years immediately preceding 1946, he could have reported the gain in his income tax return for that year. United States v. Lewis, 1951, 340 U.S. 590, 71 S.Ct. 522, 95 L.Ed. 560; Winter Realty & Con-

struction Co. v. C. I. R., supra; Keneipp v. United States, supra, 184 F.2d at page 267. However, the taxpayer neither elected to report that amount in his returns for those years, nor did he actually withdraw that amount from the registry of the court in those years. He will not now be permitted to assert that he could have done so, and receive a tax benefit as if he did. Moran v. C. I. R., 1 Cir., 1933, 67 F.2d 601.

Accordingly, judgment may be entered in favor of the United States and against the taxpayer.

4. Section III of the Internal Revenue Code, 26 U.S.C.A. § 111, which is concerned with the determination of the amount of, and recognition of, gain or loss, provides in subsection (b) as follows: "*Amount realized.* The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received."