**NITTERHOUSE v. UNITED STATES.**

No. 11050.

United States Court of Appeals
Third Circuit.

Argued Sept. 18, 1953.

Decided Oct. 12, 1953.

Rehearing Denied Nov. 12, 1953.

Henry D. O'Connor, Philadelphia, Pa. (Edwin D. Strite, Chambersburg, Pa., on the brief), for appellant.

Robert B. Ross, Sp. Asst. to Atty. Gen., Washington, D. C. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Sp. Assts. to Atty. Gen., Joseph C. Hildenberger, U. S. Atty., Bethlehem, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and GOODRICH and HASTIE, Circuit Judges.

GOODRICH, Circuit Judge.

This case raises the question as to the year in which income tax is to be paid on capital gain realized from the taking of property by eminent domain.

The taxpayer has paid the tax claimed by the government and has sued to get it back. The district court, in a thoroughly considered opinion, gave judgment against the taxpayer, D.C.E.D.Pa. 1953, 111 F.Supp. 339 and he appeals. Since we agree with the district court and largely for the reasons assigned in the opinion, it will not be necessary to prolong our discussion in great detail.

The facts were stipulated and there is no dispute upon them. Taxpayer purchased Pennsylvania land in 1943. More than six months later the United States instituted an action to condemn the land by filing a petition for condemnation in the United States District Court for the Middle District of Pennsylvania. In 1944 the United States deposited the sum of $5,370 in the registry of the court on account of just compensation to be awarded the taxpayer in the proceedings. The amount to be paid the taxpayer was litigated. In 1946 he received a judgment for $18,825 and was paid the principal sum and interest in that year. In denying recovery, the district court necessarily decided that the tax on the landowner's gain was properly attributable to the year 1946 when he received government payment for the land condemned.

The parties agree that the taking constituted a sale or exchange for the purpose of income tax.[1] They agree that the gain is to be treated as a capital gain. There may be disagreement as to when title to the land passed to the United States but that is unimportant here.[2]

The taxpayer is on a cash basis and it is quite clear that he did not get his money until 1946. Certainly it needs no collection of authority to establish the proposition that taxpayers on a cash basis pay income tax on what they have received during a taxable year.

The taxpayer, however, has argument which is ingeniously conceived. He says that the appropriate time for taxing his gain is at the time of the taking. It is true, he says, that he did not get money at that time. But section 111 of the Internal Revenue Code, 26 U.S.C.A. § 111, which governs the determination of gain or loss in a taking by eminent domain, provides that "The amount realized from the * * * disposition of property * * * [is] money received plus the fair market value of the property (other than money) received." The taxpayer says he got property other than money at the time of the taking. That property other than money consisted of his claim against the United States. This is certainly something of value, he says, for the right to be paid for property taken is protected by the Fifth Amendment. It is true that the claim against the United States for the money cannot be assigned, under the provisions of the statute,[3] but that does not mean that it is not a thing of value and the task of ascribing a "fair market

---

1. Commissioner of Internal Revenue v. Kieselbach, 3 Cir., 1942, 127 F.2d 359, affirmed 1943, 317 U.S. 399, 63 S.Ct. 303, 87 L.Ed. 358.

2. The government brief says on this point: "The taxpayer argues that the sale occurred on December 2, 1943. But we cannot agree since the deposit was not made at that time, but in the following April. * * * We do not want to make an issue of this point, however, for a decision in this case does not require a determination of the actual moment when title passed. The controlling fact is that the amount of the award was not ascertained nor paid until 1946."

3. "All transfers and assignments made of any claim upon the United States, or of any part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor, and all powers of attorney, orders, or other authorities for receiving payment of any such claim, or of any part or share, thereof * * * shall be absolutely null and void, unless they are freely made and executed in the presence of at least two attesting witnesses, after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof." 31 U.S.C.A. § 203. Later additions to this section do not concern the present situation. 31 U.S.C.A. § 203.

value" to it is not an impossible one. Further support is given to the logic of the argument by the use of language pointing in that direction by the Supreme Court of the United States in Commissioner v. Kieselbach, 1943, 317 U.S. 399, 63 S.Ct. 303, 87 L.Ed. 358. There language was used characterizing the situation after taking but before payment "as though a purchase—money lien at legal interest was retained upon the property." 317 U.S. at 403, 63 S.Ct. at 305.

The Kieselbach language need not create difficulty for us. Its use here is an instance of the familiar situation that we so often find presented when language used in one context is sought to be applied in a quite different situation. In the Kieselbach case, itself, the landowner's tax on his gain was paid as income in the year in which he got the money and the case, itself, concerned only the question of interest.

■ We may agree that the government's obligation to pay the landowner for the land it takes from him by eminent domain is something of value just as it was to this taxpayer in this case. But that does not prove that the obligation to pay a man for his land constitutes "property" within the meaning of section 111 for income tax purposes at the time of the taking. The amount was unascertained; of course it could have been ascertained by a trial just as it was here when the jury assessed the value of the land taken. Our thoughts on the matter are well expressed by Judge Learned Hand in Bedell v. Commissioner, 2 Cir., 1929, 30 F.2d 622, 624: "But if land or a chattel is sold, and title passes merely upon a promise to pay money at some future date, to speak of the promise as property exchanged for the title appears to us a strained use of language, when calculating profits under the income tax." We see no policy in favor of either taxpayer or government which would induce us to construe the word "property" in section 111 in such a strained fashion. The simplest and most easily administered rule seems to us to be to make the transaction taxable when the taxpayer gets his money. This was the rule applied in Patrick McGuirl, Inc., v. Commissioner, 2 Cir., 1935, 74 F. 2d 729 even though the taxpayer was on the accrual method.

■ There is one other point. In 1944, $5,370 was deposited by the United States with the District Court for the Middle District of Pennsylvania as compensation for the taking made earlier. This amount was in excess of the taxpayer's basis for the land. Should that portion of the gain between the taxpayer's basis and this payment be apportioned to the year of the deposit? Money which has been set apart for a taxpayer and upon which he can draw is subject to tax as of that year.[4] The fact that the taxpayer did not ask for the money thus held in the registry of the court should not be conclusive.

■ However, we do not think that this deposit was available to the taxpayer at his will only. To withdraw it would have required a court order.[5] And to get that order the petitioner would have to show that he had a clear title to the land free from tax and judgment liens and so on.[6]

It is not enough that the taxpayer might have got the money in 1944 had he applied for it and made the requisite showing. He did not apply for it and no requisite showing by him was made. Therefore, he was not in a position to show that he was unqualifiedly entitled to the money.

The judgment of the district court will be affirmed.

4. U.S.Treas.Reg. 111, § 29.42–2.

5. 40 U.S.C.A. § 258a: "Upon the application of the parties in interest, the court may order that the money deposited in the court, or any part thereof, be paid forthwith for or on account of the just compensation to be awarded in said proceeding."

6. See United States v. Certain Parcels of Land, D.C.Md.1941, 40 F.Supp. 436 and United States v. Certain Parcels of Land, D.C.S.D.Cal.1942, 44 F.Supp. 936.