Richard **DRAYTON, John R. Sauerteig and Sidney G. Stevens as escrow agents of the Delaware & Bound Brook Railroad Company, Plaintiffs,**

v.

**The UNITED STATES of America, Defendant.**

**Civ. A. No. 84–3418.**

United States District Court, D. New Jersey.

May 8, 1985.

---

Meyner & Landis, by John N. Malyska, Henry T. Benedetto, Newark, N.J., for plaintiffs.

mary judgment under Fed.R.Civ.P. 56(c) set forth in *Harrison v. Byrd*, 765 F.2d 501, 504 (5th Cir.1985).

W. Hunt Dumont, U.S. Atty., By Robert L. Handros, Trial Atty.—Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## OPINION

DEBEVOISE, District Judge.

*Introduction*

This is an action brought by a taxpayer, the Delaware & Bound Brook Railroad Company (D & BB) by its escrow agents, Richard Drayton, John R. Saverteig and Sydney G. Stevens, to obtain a refund of income tax from the United States. The government seeks to dismiss the complaint, and plaintiff has cross-moved for summary judgment. These motions are now before the court.

*Statement of Facts and Procedural History*

Pursuant to a provision of the Regional Rail Reorganization Act of 1973, 45 U.S.C. § 743(b), all of D & BB's rail properties were conveyed to Conrail on April 1, 1976. Although D & BB itself was solvent, it was affected by the Act because, in May 1879, it had leased all of its rail and nonrail properties to the Reading Company for a period of 990 years. The Reading Company had, several years before the enactment of the 1973 Rail Act, filed a petition for reorganization and thus was one of the bankrupt railroads to be reorganized into Conrail. The Act provided that railroads not in reorganization that were leased, operated and controlled by a railroad in reorganization were to convey their rail properties to Conrail. 45 U.S.C. Section 716(d).

Pursuant to 45 U.S.C. Section 743(a), Conrail deposited Conrail securities and certificates of value issued by the United States Railroad Association (USRA) with a special court, as compensation for D & BB's properties. The certificates were guaranteed by the Secretary of Transportation, under 45 U.S.C. Section 746(a), and subject to redemption at a later date, pursuant to 45 U.S.C. Section 746(c). The statute provided that the certificates were to be redeemed at "base value" by USRA on a date specified by it, after the special court had decided issues of valuation and compensation. Section 746(c)(4) sets forth the formula for computing the base value of each certificate of value. That formula is:

(a) The net liquidation value of a transferor's properties as of April 1, 1976 (net liquidation value to be determined by the special court); minus

(b) "other benefits" provided to a transferor under the 1973 and 1976 Acts; plus

(c) "compensable unconstitutional erosion" suffered by a transferor as a result of the 1973 and 1976 Rail Acts; plus

(d) interest from April 1, 1976 at the rate of 8% per annum, compounded annually; divided by

(e) the number of certificates issued to the transferor.

*See also In the Matter of the Valuation Proceedings Under Sections 303(c) and 306 of the Regional Rail Reorganization Act,* 425 F.Supp. 266, 276 (Special Court 1976).

The D & BB properties were assigned a net liquidation value by USRA in its Final System Plan. That value, however, was not accepted by D & BB which prosecuted the valuation issue before the special court. Malyska Aff. paras. 11, 12. At around the same time, D & BB and the Reading Company entered into an agreement resolving their disagreement as to their respective shares of the compensation to be obtained through the valuation litigation. The agreement, dated April 1, 1976, included a formula for allocating any compensation paid to D & BB for its rail properties transferred to Conrail. Malyska Aff. paras. 13, 14.

On August 13, 1981, the Omnibus Budget Reconciliation Act of 1981 amended existing law by eliminating Conrail securities as a payment medium and by directing that for purposes of computing the amount for which certificates of value were redeemable, the Conrail securities had no fair market value.

On August 25, 1981, D & BB and USRA entered into a settlement agreement (the D & BB/USRA Settlement Agreement) pursuant to which D & BB's rail properties were agreed to have had a net liquidation value of $4,408,417. *See* D & BB/USRA Settlement Agreement, Malyska Aff., Exhibit A. The D & BB/USRA Settlement Agreement was not to have any force and effect until two conditions were satisfied: (1) approval of the settlement by the special court; and (2) approval of the settlement by D & BB's stockholders.

On September 24, 1981, D & BB's stockholders approved the D & BB/USRA Settlement Agreement provided that the settlement was an integral part of a plan of complete liquidation which D & BB's stockholders adopted on that same date. *See* Plan of Complete Liquidation, Malyska Aff., Exhibit B. On November 13, 1981 D & BB received from the special court certificates of value worth $6,802,660 which, upon the execution of settlement papers, were redeemed by USRA for that sum. The proceeds were first shared with the Reading Company, according to the D & BB/Reading agreement, and all remaining assets were liquidated and distributed to D & BB stockholders, with the exception of funds transferred to a liquidation trust for payment of contingent obligations. Malyska Aff. paras. 22–24. D & BB was dissolved as of December 31, 1981. *Id.* at para. 25.

On December 21, 1981, D & BB wrote to the Internal Revenue Service, Assistant Commissioner, requesting a ruling concerning the character of the amount of proceeds received by D & BB upon redemption of the certificates of value that was attributable to the annual 8% accrual of interest. In its responsive ruling of May 14, 1982, the IRS held that the proceeds received by D & BB which were attributable to the 8% interest factor did not constitute proceeds from the sale or exchange of a capital asset, but constituted ordinary income upon which D & BB was required to pay income taxes. Malyska Aff. para. 26.

In a ruling request dated March 4, 1982, D & BB provided additional information to the IRS in seeking a determination on the taxable consequences of its receipt and distribution of the redemption proceeds from its certificates of value. The IRS held that no gain would be recognized to D & BB for funds received in the exchange and then distributed, with the exception of amounts attributable to the 8% interest factor which would be considered interest income. Malyska Aff. para. 27.

On September 9, 1982, D & BB filed a United States Corporation Income Tax Return for calendar year 1981. In compliance with the tax rulings, but under protest and reservation of its rights, D & BB reported the amount attributable to the annual 8% interest factor, totaling $1,195,728 as interest income for 1981. Malyska Aff. para. 28. On December 9, 1983, D & BB filed an amended United States Corporation Income Tax Return (Form 1120x) for calendar year 1981 claiming that a total of $1,195,728 should have been properly treated as proceeds from the sale or exchange of its railroad property rather than an interest income. Since the gain on such exchange should not have been recognized, stated D & BB, a total of $545,153 had been illegally assessed and collected from D & BB because of the erroneous inclusion of $1,195,728 in its 1981 income. Malyska Aff. para. 29 and Form 1120, Malyska Aff., Exhibit C. More than six months passed from the time that D & BB filed its refund claim to the time it commenced this suit. No notice of disallowance of the claim has been mailed to D & BB by registered mail by the Commissioner of Internal Revenue.

Section 374 of the Internal Revenue Code, 26 U.S.C. Section 374, provides that receipt of Conrail securities or USRA certificates of value received in exchange for rail properties are not recognized as taxable gain. Both parties to this suit agree that, except for the amount received by D & BB representing the 8% interest factor, there is no dispute that the cash received

upon redemption of the certificates of value is nontaxable.[1]

The government's motion to dismiss and D & BB's motion for summary judgment both focus on one issue. That issue is whether the interest received by D & BB represents an amount in excess of the value of its assets, or whether the interest is, pursuant to 45 U.S.C. § 746(c)(4), a component of the actual value of the assets, and therefore not interest at all.

*Discussion*

The government has moved to dismiss D & BB's complaint for failure to state a claim upon which relief can be granted. The government contends that the $1,195,728 received by D & BB represents excess over the value of D & BB's rail property at the time of the taking, and therefore is interest taxable as ordinary income under IRC Section 61(a). In support of this contention, the government relies on two Supreme Court decisions: *Blanchette v. Connecticut General Insurance Corp.,* 419 U.S. 102, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974) and *Kieselbach v. Commissioner,* 317 U.S. 399, 63 S.Ct. 303, 87 L.Ed. 358 (1943). In *Blanchette, supra,* the Supreme Court upheld the constitutionality of the Rail Act in that it provided for just compensation for the taking of property. At one point, the Court stated "As long as creditors are assured fair value, with interest, for their properties, the Constitution requires nothing more." 419 U.S. at 156, 95 S.Ct. at 365. The government seems to argue that, by this statement, the Supreme Court contemplated that the interest factor automatically represented an amount in excess of value. However, that reading gives much too specific an interpretation to a general statement. *Blanchette* does not consider the nature of the interest component in a tax context.

*Kieselbach, supra,* involved a municipal ordinance that required that a property owner be paid interest on a condemnation award from the date of condemnation to the date the award was actually paid. The Court held that the interest was indemnification for delay, not part of the sales price, and therefore taxable as ordinary income. 317 U.S. at 400–403, 63 S.Ct. at 304–305. The government argues that the situation in the case at hand is exactly the same as in *Kieselbach,* and that that case is therefore dispositive of the instant case. I disagree. The case at hand is not a simple condemnation case; the Rail Acts of 1973 and 1976 were complex acts enacted to deal with a crisis in rail transportation. *See generally Blanchette, supra,* 419 U.S. at 108–117, 95 S.Ct. at 341–345. The 1976 Rail Act established formulas for ensuring that railroads that turned over their property to Conrail received the constitutional minimum for that property. *See* 1976 U.S. Code Cong. & Admin. News at 106–107 (94th Cong.2d Sess.). The fact that interest is included as a factor in a formula for determining the base value of the USRA certificates of value, 45 U.S.C. Section 746(c)(4), means that the interest factor cannot simply be assumed to represent an excess over the value of the property, as in *Kieselbach. Kieselbach* is not, therefore, dispositive, and the government's motion to dismiss D & BB's complaint is consequently denied.

D & BB has cross-moved for summary judgment pursuant to Fed.R.Civ.P. 56 on the grounds that the undisputed facts demonstrate that the 8% interest factor is a component of the base value of the certificates of value, and is not to be treated as taxable income. In a lengthy brief, D & BB has undertaken an exhaustive analysis of why the interest component is not to be treated as interest for tax purposes. The

1. Throughout the papers of both parties, the amount of interest at issue is stated to be $1;195,728, the noninterest component to be $4,408,417, and the total to be $6,802,660. However, the two components actually total $5,604,145. The D & BB/USRA Settlement Agreement states that the interest component is $2,394,243, which, when added to the net liquidation value (noninterest), does total $6,802,660. *See* Agreement, Table 1, Malyska Aff., Exhibit A. It is not clear why the disparity in figures exists, but since it does not affect the disposition of these motions, it need not be considered here.

salient points of that argument are summarized below.

The language of IRC 374(c) clearly states that certificates of value (and Conrail securities) received in exchange for rail properties result in no tax consequences to the transferor of such property, and there is no question that the D & BB/USRA transaction constituted such an exchange. D & BB argues that the term "certificates of value" as used in IRC Section 374 has a specific statutory meaning which is set forth in 45 U.S.C. Section 746(c)(4). Pursuant to Section 746(c)(4), the base value of a certificate of value, or the value at which the certificate will be redeemed, is determined by taking the net liquidation value of a transferor's properties, subtracting other benefits received by the transferor under the Rail Act, adding compensable unconstitutional erosion, adding 8% per annum interest from April 1, 1976, compounded annually, and finally dividing the resultant value by the number of certificates of value held by the transferor. Thus, the 8% annual interest is one of several factors considered in determining base value, and D & BB therefore contends that the interest is an indistinguishable part of the certificate of value and must enjoy the same nonrecognition treatment as any other factor considered pursuant to Section 746(c)(4).

D & BB supports its argument primarily by reference to both explicit and implicit Congressional intent as evidenced by relevant legislative history. D & BB points out that Congress made no comment as to the 8% interest component and refers to the legislative history of the 1976 Rail Act in which Congress evidenced its belief that the redemption price of the certificates of value is the "constitutional minimum value of the rail properties transferred." 1976 U.S. Code Cong. & Admin. News at 107 (94th Cong.2d Sess.). Since D & BB was to receive that minimum as a tax-free exchange for its rail properties, argues D & BB, no component used in determining that minimum can be considered a taxable gain.

Furthermore, D & BB contends that to tax the interest component would result in disparate tax treatment had Conrail securities continued to remain an item of exchange for rail properties. Under IRC Section 374, neither Conrail securities nor certificates of value taken in exchange for rail properties are considered taxable gain. Pursuant to that section, securities and certificates would have equal value, but securities would never have an interest component. Therefore, a transferor who received securities rather than certificates of value would never be subject to an IRS claim that any of its redemption proceeds constituted taxable gain. Thus, D & BB argues that disparate tax treatment under the same IRC provision would result.

Upon consideration of D & BB's arguments, and a review of the relevant statutes and the undisputed facts of this case, I conclude that D & BB is correct in its characterization of the statutory 8% annual interest as a component of the certificate of value, and not as taxable interest. There being no genuine issues of fact precluding judgment for D & BB, I grant D & BB's motion for summary judgment.

The provisions of 45 U.S.C. Section 746(c)(4) include the 8% annual interest as a component of the base value of the certificates of value, and do not add the interest once the base value has been determined. The interest component is thus an integral part of the redemption, or base, value for rail properties, and is not an amount in excess of the value of such properties. Under the express provisions of Section 374(c) the aggregate sum received should result in no tax consequences to D & BB. The computation of the base value of the certificates of value issued to D & BB, as set forth in the D & BB/USRA Settlement Agreement, reveals that that computation was done in accordance with the provisions of Section 746(c)(4). *See* Settlement Agreement, Table 1, Malyska Aff., Exhibit A. Therefore, the interest component was not a taxable gain to D & BB, and D & BB is entitled to a refund of the taxes it paid on that interest component in 1981.

*Conclusion*

The government's motion to dismiss D & BB's complaint is denied. D & BB's motion for summary judgment is granted.

Counsel for D & BB are requested to submit an appropriate form of proof.