T.C. Memo. 2001-157


UNITED STATES TAX COURT


ANDREA CIPRIANO, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 20699-98.            Filed June 28, 2001.


Andrea Cipriano, pro se.

Leon St. Laurent, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


SWIFT, Judge:  For 1994 and 1996, respondent determined deficiencies in petitioner's Federal income taxes and accuracy-related penalties as follows:

|  |  | Accuracy-Related Penalty |
| Year | Deficiency | Sec. 6662(a) |
| 1994 | $3,046 | $ 608 |
| 1996 | 9,754 | 1,951 |

After settlement of some issues, the primary issue for decision is whether certain amounts petitioner received in connection with a division of marital property constitute taxable interest income.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

At the time the petition was filed, petitioner resided in Basking Ridge, New Jersey.

Petitioner is well educated. In 1964, petitioner received a bachelor of arts degree in teaching from William Paterson College. In 1984, petitioner received a masters degree in business administration from Fairleigh Dickenson University.

Since 1987, petitioner has been employed as a revenue agent for respondent.

Petitioner also is a certified public accountant and teaches accounting and tax courses part time at Ramapo College.

Petitioner's ex-spouse is an attorney and maintains a law practice in New Jersey.

On March 17, 1993, petitioner and her ex-spouse divorced and entered into a property settlement agreement (the agreement).

Under the terms of the agreement, petitioner was entitled to receive $385,000, representing the value of her share of the marital assets. Under the agreement, of the total $385,000, petitioner was to receive $235,000 in cash immediately after the divorce, and petitioner was to receive the remaining $150,000 through a series of 5 annual installments of $30,000, plus interest of 5.5 percent per year on the unpaid balance.

To secure payment of the installment payments that were due, petitioner received a mortgage on real estate owned by petitioner's ex-spouse. The language from the agreement relating to the mortgage stated as follows:

> A mortgage in the amount of $150,000 shall be recorded against the real estate * * * which mortgage shall bear interest at the rate of 5.5% and shall be paid in annual installments of $30,000 plus all accrued interest over a period of five (5) years, each payment falling due on the anniversary date of this Agreement.

Under the agreement, petitioner's ex-spouse was also liable for all attorney's fees incurred by petitioner in enforcing payment of amounts due under the agreement.

As part of the property settlement agreement, petitioner and her ex-spouse each agreed to relinquish any rights they then owned in property held by the other spouse.

In late March of 1993, shortly after the divorce, petitioner received the $235,000 cash payment that was due under the agreement.

In March of 1994, however, petitioner did not receive the first $30,000 installment payment due from her ex-spouse. Petitioner then requested the Superior Court of New Jersey Chancery Division of Monmouth County to issue an order compelling petitioner's ex-spouse to pay petitioner this delinquent $30,000 installment payment plus interest and attorney's fees. Pursuant to a June 24, 1994, court order, petitioner received from her ex-spouse $41,649, of which $30,000 was denominated as principal, $1,015 was denominated as attorney's fees, and the remaining $10,634 was denominated as accrued interest.

The $30,000 installment payments due from petitioner's ex-spouse in each of 1995 and 1996, plus amounts denominated as accrued interest, were received by petitioner as due.

In summary, petitioner received the following payments from her ex-spouse under the property settlement:[1]

| Year | Amounts Denominated As Principal | Amounts Denominated As Interest |
|------|----------------------------------|---------------------------------|
| 1993 | $235,000 | $ -0- |
| 1994 | 30,000 | 10,634 |
| 1995 | 30,000 | 6,000 |
| 1996 | 30,000 | 4,950 |

---

[1] Not shown in the schedule is the $1,015 that was denominated as attorney's fees that petitioner received in 1994.

The record does not reflect whether or when petitioner received the installment payments that were due from her ex-spouse under the agreement in 1997 and 1998.

On her 1994, 1995, and 1996 timely filed Federal income tax returns, petitioner did not report as interest income any of the above payments received from her ex-spouse.

By letter dated July 2, 1998, respondent notified petitioner that respondent wished to examine petitioner's 1995 and 1996 Federal income tax returns. In the letter, respondent proposed a meeting for July 30, 1998, between respondent's audit representative and petitioner relating to petitioner's 1995 and 1996 Federal income taxes. At petitioner's request, the meeting was held on July 30, 1998, in Parsippany, New Jersey, the location of petitioner's employment.

Petitioner and respondent's audit representative met again in August of 1998 to discuss petitioner's 1995 and 1996 Federal income taxes. During that meeting, petitioner and respondent's representative failed to reach an agreement on various adjustments that had been raised. After this meeting, in August of 1998 or thereafter, petitioner's 1994 Federal income tax return was opened for examination by respondent. Another meeting was scheduled for September 16, 1998, between petitioner and respondent's audit representative to discuss further petitioner's 1995 and 1996 Federal income taxes and to discuss petitioner's

1994 Federal income tax.  Petitioner, however, failed to attend this meeting.

On October 6, 1998, respondent mailed to petitioner a notice of deficiency regarding petitioner's 1994 and 1996 Federal income taxes.  In the notice of deficiency sent to petitioner for 1994 and 1996, respondent determined that petitioner failed to report as taxable income on her respective Federal income tax returns the above $10,664[2] and $4,950 payments that petitioner received from her ex-spouse in 1994 and 1996 that were denominated as interest.[3]

In the petition filed with this Court, petitioner raised as a new issue a claimed ordinary deduction in the amount of $79,688 for expenses relating to attorney, accountant, and appraiser fees allegedly incurred in connection with her divorce, the division of marital property, and the installment payments.  Petitioner does not indicate whether the $79,688 should be deducted in 1994 or in 1996 or how the expenses should be allocated between 1994 and 1996.

---

[2]  The record does not explain the $30 variance in amounts denominated as interest by the Superior Court of New Jersey Chancery Division of Monmouth County and by respondent in the notice of deficiency.

[3]  The record does not reflect whether respondent mailed to petitioner a statutory notice of deficiency regarding petitioner's 1995 Federal income tax.

OPINION

Generally, the burden of proof is on the taxpayer.  See
Rule 142(a).  In 1998, however, Congress enacted section 7491,
effective July 22, 1998, under which the burden of proof will be
placed on respondent if a taxpayer meets certain requirements.
See Internal Revenue Service Restructuring and Reform Act of 1998
(RRA 1998), Pub. L. 105-206, sec. 3001, 112 Stat. 685, 726.

Under section 7491(a), the burden of proof with regard to
any fact issue will be placed on respondent if the taxpayer
maintained adequate records, satisfied applicable substantiation
requirements, cooperated with respondent, and introduced during
the court proceeding credible evidence with regard to the fact
issue.

The specific relevant language of section 7491 provides as
follows:

SEC. 7491.  BURDEN OF PROOF.

(a) Burden Shifts Where Taxpayer Produces Credible
Evidence.--

(1) General rule.--If, in any court proceeding, a
taxpayer introduces credible evidence with respect to
any factual issue relevant to ascertaining the
liability of the taxpayer for any tax imposed by
subtitle A or B, the Secretary shall have the burden of
proof with respect to such issue.

(2) Limitations.--Paragraph (1) shall apply with
respect to an issue only if--

>        (A) the taxpayer has complied with the
> requirements under this title to substantiate any
> item;
>
>        (B) the taxpayer has maintained all records
> required under this title and has cooperated with
> reasonable requests by the Secretary for
> witnesses, information, documents, meetings, and
> interviews; * * *

The legislative history of section 7491(a) makes it clear that before the burden of proof will be placed on respondent, taxpayers have the burden of proving that they satisfied each of the above requirements of section 7491.  The legislative history states as follows:

> The taxpayer has the burden of proving that
> it meets each of these conditions, because
> they are necessary prerequisites to
> establishing that the burden of proof is on
> the Secretary.  [H. Conf. Rept. 105-599, at
> 239 (1998), 1998-3 C.B. 747, 993.]

A shift in the burden of proof under section 7491 is available only in court proceedings arising in connection with examinations by respondent that commenced after July 22, 1998, the effective date of section 7491.  See RRA 1998 sec. 3001(c)(2), 112 Stat. 727.

For 1994, because respondent's examination of petitioner's 1994 Federal income tax commenced in August of 1998, or thereafter, it is clear that section 7491 generally applies to petitioner.  Petitioner contends that for 1994 she has met the

requirements of section 7491(a) and that the burden of proof is on respondent on the issue as to the treatment of the $10,664 denominated as interest.

For 1994, respondent contends that petitioner did not meet the requirements of section 7491(a) and therefore that the burden of proof remains with petitioner. Among other things, respondent notes that during the examination petitioner failed to attend the scheduled September 16, 1998, meeting, the only scheduled meeting regarding petitioner's 1994 Federal income tax.

For 1996, petitioner contends that respondent's July 2, 1998, letter was inadequate and defective to commence on July 2, 1998, respondent's examination of petitioner's 1996 tax. Petitioner therefore argues that respondent's examination for 1996 did not commence before July 30, 1998, the date of the actual meeting between petitioner and respondent's representative. Petitioner also claims that respondent has not provided evidence to prove when respondent's July 2, 1998, letter was actually mailed to petitioner. Petitioner does not specifically claim to have received that letter after July 22, 1998, the effective date of section 7491.

Based on the above, petitioner argues that respondent's examination of petitioner for 1996 commenced after July 22, 1998, that section 7491(a) is therefore generally applicable, and that

thereunder the burden of proof is on respondent as to the treatment of the $4,950 denominated as interest.

Respondent argues that the letter to petitioner dated July 2, 1998, was mailed on that date, that the letter effectively commenced on that date the examination of petitioner's 1996 Federal income tax, 20 days prior to the effective date of section 7491, and therefore that for 1996 the burden of proof is on petitioner.

Neither the Code nor the regulations define when an examination will be regarded as having commenced for purposes of section 7491. Respondent points us to the legislative history of section 7491 and to Rev. Proc. 97-27, 1997-1 C.B. 680. The legislative history explains the following with regard to what constitutes an examination for purposes of section 7491:

> An audit is not the only event that would be considered an examination for purposes of this provision. For example, the matching of an information return against amounts reported on a tax return is intended to be an examination for purposes of this provision. Similarly, the review of a claim for refund prior to issuing that refund is also intended to be an examination for purposes of this provision. [H. Conf. Rept. 105-599, supra at 242, 1998-3 C.B. at 996.]

In Rev. Proc. 97-27, 1997-1 C.B. at 683, for purposes of a change in accounting method under section 481, respondent takes the position that any contact by respondent to schedule an

examination is sufficient to commence an examination.  Rev. Proc. 97-27, supra, states as follows:

> an examination of a taxpayer with respect to a federal income tax return begins on the date the taxpayer is contacted in any manner by a representative of the Service for the purpose of scheduling any type of examination of the return. * * *  [Id.; emphasis added.]

Respondent argues that the above examples suggest that an examination may occur without a personal meeting between respondent's representative and the taxpayer or the taxpayer's representative.

Focusing on the facts before us in this case, we do not believe that the character of the amounts in dispute for both 1994 and 1996 need be resolved on the basis of the burden of proof.  In spite of the extensive arguments of the parties in their briefs regarding the burden of proof in this case for both 1994 and 1996, as set forth below, we conclude that the evidence establishes that the amounts petitioner received that were denominated as interest in fact constituted interest income for Federal income tax purposes.  We so hold, and we decline to resolve the parties' many arguments regarding the commencement of respondent's 1996 examination, regarding the applicability of section 7491(a), and regarding petitioner's qualification under the various requirements of section 7491(a).

Gross income includes all income from whatever source derived. See sec. 61(a). Interest received is specifically included within the definition of gross income. See sec. 61(a)(4). Generally, any portion of a judgment that compensates taxpayers for delay in receipt of money constitutes interest income and is taxable as such. See Kieselbach v. Commissioner, 317 U.S. 399, 403 (1943).

Petitioner contends that the portions of the installment payments received from her ex-spouse in 1994 and 1996 that were denominated as interest (namely, $10,664 and $4,950, respectively) represented postdivorce appreciation in the value of her ex-spouse's law practice and that these amounts should be treated as nontaxable transfers under section 1041. To the contrary, it is clear that the above amounts compensated petitioner for delay in the receipt of the marital assets to which petitioner was entitled as of the day of the divorce. The amounts received are consistent with the 5.5-percent interest rate specified in the agreement.[4] The $10,664 and the $4,950 that petitioner received in 1994 and 1996 constitute interest income.

---

[4] Assuming that the installment payments were paid on time each year, the approximate interest to be received each year by petitioner on $150,000 payable in 5 annual installments of $30,000 would be $8,250 in year 1, $6,600 in year 2, $4,950 in year 3, $3,300 in year 4, and $1,650 in year 5.

We now turn to petitioner's claim that she is entitled to an additional $79,688 deduction, or some part thereof, for fees paid to attorneys, accountants, and appraisers.  The parties herein make no argument as to the placement of the burden of proof nor as to how section 7491(a) applies, if at all, to a new issue.

In general, attorney's fees and other expenses relating to a divorce represent personal expenses and are nondeductible to either spouse.  See United States v. Gilmore, 372 U.S. 39, 49 (1963).  A deduction under section 212, however, may be allowed for expenses incurred for the production or collection of income, such as expenses relating to the right to receive interest income.

The evidence in support of the $79,688 paid to attorneys, accountants, and appraisers does not indicate the date the fees were actually paid by petitioner.  From the invoices provided by petitioner, it appears that most of the bills were paid by petitioner before the years in dispute.  Furthermore, the invoices that do relate to 1994 and 1996 fail to differentiate between amounts paid in connection with petitioner's divorce and amounts paid, if any, to obtain the receipt of interest income.

For 1994 and 1996, no part of the claimed $79,688 is deductible by petitioner.

Section 6662(a) imposes a penalty of 20 percent on the portion of an underpayment of tax attributable to negligence or

to disregard of rules and regulations.  For purposes of section 6662(a), negligence consists of a failure to make a reasonable attempt to comply with the Code.  See sec. 6662(c).

Accuracy-related penalties under section 6662(a) do not apply to any part of an underpayment if the taxpayer shows reasonable cause and if the taxpayer acted in good faith.  See sec. 6664(c).  Whether a taxpayer acted with reasonable cause and in good faith is ascertained on a case-by-case basis, taking into account all of the pertinent facts and circumstances.  See sec. 1.6664-4(b)(1), Income Tax Regs.

Circumstances that may establish reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of the experience, knowledge, and education of the taxpayer.  See id.

With regard to the penalties under section 6662(a) for 1994 and 1996, the parties make no argument regarding the burden of proof or the burden of production.  See sec. 7491(c).

Because of petitioner's education and professional experience, and because the agreement adequately identified the payments in question as interest, petitioner knew or should have known that the payments constituted interest income and were includable in her Federal income tax returns.

We conclude that petitioner is liable for the accuracy-related penalties.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.
